

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-2-2006

# Leon-Oviedo v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3638

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Leon-Oviedo v. Atty Gen USA" (2006). *2006 Decisions.* Paper 967.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/967

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-3638
_____

IGNACIO LEON-OVEIDO,
                                                Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A22-775-073)
Immigration Judge: Honorable William K. Strasser
_____

Submitted Under Third Circuit LAR 34.1(a)
May 10, 2006

Before: SCIRICA, CHIEF JUDGE, BARRY AND COWEN, CIRCUIT JUDGES

(Filed:  June 2, 2006)

_____

OPINION
_____

PER CURIAM

        Petitioner Ignacio Leon-Oveido, a native and citizen of Cuba, received permission

from the government of Cuba to migrate to the United States, and he arrived as part of the

Mariel boatlift in May 1980.  He was paroled into the United States indefinitely, see

Immigration & Nationality Act ("INA") § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). Leon was a member of the Cuban National baseball team from 1979 to 1980, and he aspired to play professionally in the United States. Word of his professional aspirations got back to the communist government through team members of the Young Communist Party. After that, Leon was removed from the team and not allowed to play baseball in Cuba. It was then that he decided to leave Cuba.

The administrative record does not reveal whether Leon pursued his dream of playing professional baseball. However, he has raised a family, worked continuously in recent years, brought his mother out of Cuba and supports her, and, in 2000, he applied to adjust his status to that of lawful permanent resident. In 2002, Leon decided to travel to Cuba to investigate the possibility of bringing his aging and ill father to the United States. He applied for permission, and was given a refugee travel document, A.R. 263, and advance parole. A form, "Authorization For Parole of an Alien into the United States," indicated that he had been paroled indefinitely into the United States, and that he could resume his application for adjustment of status upon his return. A.R. 408.

Upon his return to the United States on December 7, 2002, however, Leon was detained by immigration authorities on the basis of three drug convictions. He was convicted in September 1987 of possession of an amphetamine in violation of former N.J.S.A. § 24:21-20a(1), and possession of a handgun without a permit in violation of N.J.S.A. § 2C:39-5(b), resulting in a sentence of 30 days in the county jail. He was convicted in April 1990 of manufacturing, distributing or dispensing cocaine, or

2

possessing with intent to manufacture, distribute or dispense cocaine in violation of N.J.S.A. § 2C:35-5(a)(1), (b)(2). In March 2000, he was convicted of possession of over 20 grams of marijuana in violation of the Florida criminal code. The April 1990 New Jersey conviction for manufacturing, distributing or dispensing cocaine, or possession with intent to do so, was the most serious, resulting in a term of imprisonment in the county jail of 364 days. A.R. 76-77.

Leon was served with a Notice To Appear on the basis of those convictions, charging him as inadmissible under INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II), as an alien who had been convicted of a controlled substance violation, and § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(A)(i)(II), as an alien the immigration officer knows or has reason to believe has been a controlled substance trafficker.[1] At his removal hearing, Leon flatly denied that he was a drug trafficker, A.R. 75-78, but he did admit to the convictions, rendering him plainly inadmissible under INA § 212(a)(2)(A)(i)(II).

Believing one of his convictions to be an aggravated felony, the Immigration Judge found Leon ineligible for any form of relief except deferral of removal under the Convention Against Torture ("CAT").[2] In support of his application under the CAT,

---

[1] There was a third charge, which the government eventually withdrew.

[2] The IJ concluded that Leon was ineligible to adjust his status under either the Cuban Adjustment Act or any of the regular adjustment of status provisions, apparently on the basis of his April 1990 New Jersey conviction for violating N.J.S.A. § 2C:35-5(a)(1), (b)(2). Leon did not contest this conclusion and we do not address it.

3

Leon asserted that he will be remembered and regarded as a political dissident, and that the communist government of Cuba was taking reprisals against dissidents. In addition, his brother was arrested in Cuba in 2001 and questioned in connection with his work on the Varela Project.[3] Leon also wrote a letter to the IJ, contending that the United States government had specifically given him permission to travel and re-enter the United States. A.R. 202-03.

The IJ denied relief under the CAT. In his oral decision, the IJ found that Leon had not been harmed or threatened during his 2002 visit to his father, and that he was allowed to leave Cuba without incident. The IJ noted that Cuba is a totalitarian state, according to the State Department Country Reports, and that some people are persecuted for political dissent. However, Leon had failed to establish that he would be singled out for mistreatment upon his return, even in view of the possibility that his drug convictions might be viewed negatively by the Cuban government.

Leon appealed to the Board of Immigration Appeals, contending that the government should be estopped from removing him because he was given permission by advance parole to visit his ailing father. In addition, he contended that his evidence was sufficient to establish that he would be singled out as a dissident because he previously had been censured. Also, as someone who has lived in the United States for 23 years, he

---

[3] The Varela Project is a petition for referendum, seeking political and economic reform. Its leader, Oswaldo Payá, has gained recognition in the international community for his activities on behalf of political reform in Cuba. A.R. 324.

would be an "obvious" target for reprisal. Moreover, his criminal record would make him a target. A.R. 8-9.

On March 24, 2004, the Board of Immigration Appeals dismissed the appeal. The BIA acknowledged that Cuba's human rights record is among the worst in the world. However, Leon's evidence did not establish that Cuba tortures individuals who leave the country illegally or defect, and, even if Leon is imprisoned upon his return, the admittedly unacceptable conditions in Cuban prisons do not rise to the level of "torture" within the meaning of the CAT, 8 C.F.R. § 1208.18(a)(1). If conditions do rise to the level of torture, there is no evidence that the Cuban government maintains such conditions with the specific intent to inflict torture on inmates, In re: J-E-, 23 I. & N. Dec. 291, 300-01 (BIA 2002). The BIA rejected without discussion the other arguments raised on appeal.

On December 30, 2004, Leon filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in United States District Court for the District of New Jersey, claiming that his detention was unlawful and in violation of due process, because immigration authorities arbitrarily revoked his previously granted right to travel. In an amendment to the habeas petition, he argued under the Due Process Clause that he should be eligible for cancellation of removal under INA § 240A, 8 U.S.C. 1229b, because his convictions predate the Antiterrorism and Effective Death Penalty ("AEDPA") and Illegal Immigration Reform and Immigrant Responsibility ("IIRIRA") Acts. Finally, he argued that the denial of deferral of removal under the CAT lacked a rational basis.

After passage of the Real ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat.

231 (May 11, 2005), the Attorney General answered an order to show cause, contending that any challenge to Leon's detention was moot because Immigration and Customs Enforcement was unable to remove him, and thus had released him on an Order of Supervision, effective August 24, 2004.[4] In all other respects, the petition was subject to transfer to this Court. The District Court exercised jurisdiction over the unlawful detention claim and dismissed it as moot. Insofar as the habeas petition challenged a final order of removal, the court held that it lacked jurisdiction under the Real ID Act, and transferred the action to this Court.

As a threshold matter, we find that transfer was appropriate. See Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir. 2005), cert. denied, 126 S. Ct. 1362 (U.S. 2006). However, the Attorney General has argued on appeal, and we agree, that our jurisdiction is limited to constitutional claims and questions of law, see 8 U.S.C. § 1252(a)(2)(D), because, under 8 U.S.C. § 1252(a)(2)(C), orders against criminal aliens are not subject to judicial review except as provided in subparagraph (D). Leon qualifies as a criminal alien because he is inadmissible under INA § 212(a)(2)(A)(i)(II), at a minimum, as an alien who has been convicted of a controlled substance violation. See 8 U.S.C. § 1252(a)(2)(C) ("except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a

---

[4] We note that, as there is no repatriation agreement with Cuba, Leon could not be held in custody indefinitely. Clark v. Martinez, 543 U.S. 371, 386 (2005) (government "concedes that it is no longer even involved in repatriation negotiations with Cuba").

criminal offense covered in section 1182(a)(2)...").  See also Kamara v. U.S. Attorney General, 420 F.3d 202, 209-211 (3d Cir. 2005).[5]

In his informal brief, Leon has argued only that the Board of Immigration Appeals and the Immigration Judge erred in denying him deferral of removal under the CAT, and this is the only issue we address.  The other habeas claims that the government arbitrarily revoked his previously granted right to travel, and that he is eligible for cancellation of removal because his qualifying convictions predate AEDPA and IIRIRA, have not been briefed and would have to be considered waived, see, e.g., Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir.1993), to the extent that we had jurisdiction to consider them in a petition for review.  If, as a challenge to an unlawful detention they sound in habeas, as the District Court concluded, we could exercise jurisdiction under 28 U.S.C. § 1291 to review the District Court's determination of mootness, but only if Leon had separately appealed this part of the District Court's order.[6]

We will deny the petition for review.  Because of 8 U.S.C. § 1252(a)(2)(C), we are

_____

[5] We thus find it unnecessary to reach the issue whether it was established that Leon also was inadmissible under INA § 212(a)(2)(C), as an alien the immigration officer knows or has reason to believe has been a controlled substance trafficker.

[6] In any event, with respect to Leon's estoppel argument, we note for his benefit that he could only succeed if he could prove (1) a misrepresentation by the government, (2) which he reasonably relied upon; (3) to his detriment and (4) affirmative misconduct by the government.  Dipeppe v. Quarantillo, 337 F.3d 326, 335 (3d Cir. 2003) (citing United States v. Asmar, 827 F.2d 907, 912 (3d Cir.1987)).  Were we to address this issue, we would be unlikely to conclude that the second and fourth factors are met if he failed to disclose his drug convictions on his application to adjust his status and again when he applied for permission to travel.

7

limited, with respect to the denial of relief under the CAT, to reviewing only "pure questions of law" and "issues of application of law to fact, where the facts are undisputed and not the subject of challenge." Kamara, 420 F.3d at 211 (citations omitted).  In order to establish a claim for deferral of removal, the petitioner has the burden of establishing that it is more likely than not that he would be subject to torture if returned to his home country.  Id. at 212-13 (citing 8 C.F.R. § 208.16(c)(2)).  The torture need not be on the basis of political opinion, as is the case with asylum and withholding of removal.  See Tarrawally v. Ashcroft, 338 F.3d 180, 188 (3d Cir. 2003).

We conclude that the BIA stated the proper legal standard in its opinion concerning Leon's application for relief.  See 8 C.F.R. § 1208.18(a); Auguste v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005).  Properly applying the regulations to the facts of this case, we further agree that Leon did not establish that the probability of torture by the Cuban government exceeds 50% in his case.  Kamara, 420 F.3d at 214.  There is no claim of past torture.  Leon's CAT claim is premised on the possibility that he will be singled out as a political dissident because of his athletic censure over 20 years ago, his long residence in the United States, his application for asylum, and because he is an individual with a record of drug convictions.  We consider all of these factors together as they might impact on his being singled out.  Kamara, 420 F.3d at 214.

However, the only evidence Leon presented that was personal to him is the athletic censure and the 2001 arrest and interrogation of his politically active brother.  Like the IJ and the BIA, we are unpersuaded that Leon has met his burden of proof, 8 C.F.R. §

8

208.16(c)(2) ("The burden of proof is on the applicant...."). Simply put, he produced no evidence to show that the Cuban government has any continuing interest in him. Unlike his brother, he has not been active in the Varela Project, and the athletic censure, even if it was recent, is not persuasive evidence that he would be tortured.

In addition, Leon failed utterly to offer evidence that his exile status or record of drug convictions would cause him to be singled out. The BIA concluded that Leon did not establish that the Cuban government tortures individuals who leave the country illegally or defect, and we agree that he did not meet his burden of proof in this respect. We also point out that Leon's migration to the United States in 1980 was, by his own admission, legal. A.R. 57. Furthermore, a claim that the Cuban government would subject him to preventive detention on the basis of his criminal record, see Auguste, 395 F.3d at 129, was not raised or argued at his hearing and was mentioned only in passing in his brief on appeal to the BIA. Here too there is a complete failure of proof.

Because Leon did not meet his burden of proof to show that he would be singled out, we specifically do not reach the difficult questions concerning whether the unacceptable conditions in Cuban prisons rise to the level of "torture" within the meaning of the CAT, or, if conditions do rise to the level of torture, there is evidence that the Cuban government maintains such conditions with the specific intent to inflict torture on inmates. We note that, according to the 2002 State Department Country Reports on Human Rights Practice, members of the security forces sometimes beat and otherwise abuse human rights advocates, detainees, and prisoners. A.R. 297. These reports alone,

9

however, are insufficient to demonstrate that it is more likely than not that a particular individual will be tortured by the government if returned to Cuba, <u>Tarrawally</u>, 338 F.3d at 188, and Leon has not provided evidence that he is similarly situated to any individuals discussed in these reports.

We will deny the petition for review.