

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-15-2005

# Bonhometre v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-2037

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Bonhometre v. Atty Gen USA" (2005). *2005 Decisions.* Paper 769.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/769

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2037

———

FREBERT BONHOMETRE

<u>Petitioner</u>

v.

ALBERTO GONZALES, Attorney General of the United
States;<sup>*</sup> IMMIGRATION AND NATURALIZATION SERVICE

———

On Petition for Review from the United States
Department of Justice Board of Immigration Appeals
BIA No. A91 436 391

———

Argued March 8, 2005

Before: SCIRICA, <u>Chief Judge</u>, and ROTH and VAN
ANTWERPEN, <u>Circuit Judges</u>.

(Filed: July 15, 2005)

James M. Tyler, Esq. (Argued)
Schubert, Bellwoar, Cahill & Quinn
Two Penn Center, Suite 1400
1500 John F. Kennedy Blvd.
Philadelphia, Pennsylvania 19102

*Counsel for Petitioner*

---

<sup>*</sup> Substituted pursuant to Fed. R. App. P. 43(c).

Peter D. Keisler, Esq.
Donald E. Keener, Esq.
Alison Marie Igoe, Esq. (Argued)
United States Department of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

Sonya F. Lawrence, Esq.
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA 19106

*Counsel for the Government*

———

OPINION OF THE COURT

———

VAN ANTWERPEN, Circuit Judge.

Before us is what originally was the Government's appeal from an order of the United States District Court for the Eastern District of Pennsylvania (Dalzell, J.) granting Frebert Bonhometre's petition for writ of habeas corpus. See Bonhometre v. Ashcroft, 306 F. Supp. 2d 510 (E.D. Pa. 2004). The District Court ruled that the Board of Immigration Appeals violated Mr. Bonhometre's Fifth Amendment right to procedural due process by failing to advise him of his potential eligibility for relief from removal. What is now before us is a petition for review alleging the same procedural due process violations as were asserted in Mr. Bonhometre's habeas petition. After consideration of what has become a procedurally-problematic case, we concluded that we need not reach the merits of the procedural due process challenge[1] alleged here because Mr.

———

[1] For simplicity, we shall refer to Mr. Bonhometre's claims of error as "procedural due process" challenges. However, we make no judgment as to whether or not the failure of an Immigration Judge or the Board of Immigration Appeals to advise

2

Bonhometre did not exhaust the administrative remedies that were available to him as of right at the agency level. Consequently, we deny his Petition for Review and reverse the District Court's grant of habeas corpus.

## I. FACTS

Frebert Bonhometre is a native and citizen of Haiti who was granted temporary legal residency status on September 15, 1989. His common-law wife and three children are all United States citizens. On December 12, 1995, Mr. Bonhometre plead guilty in the Commonwealth of Massachusetts to armed robbery, assault and battery, and assault with a dangerous weapon. He was sentenced to a prison term of not more than three years.

Mr. Bonhometre served two years of his sentence before he was released into the custody of the Immigration and Naturalization Service[2] ("INS") on July 18, 1997. The INS initiated removal proceedings, charging him with removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act of 1952 ("INA"), which requires removal of any alien convicted of an aggravated felony at any time after admission to the United States. 8 U.S.C. § 1227(a)(2)(A)(iii) (1998); see also 8 U.S.C. §1101(a)(43)(F) (1997) (defining "aggravated felony" to include "a crime of violence . . . for

---

an alien of the multitude of forms of relief that may be available to him (despite the fact that none seem to have been implicated by the facts in the administrative record) is a denial of his Fifth Amendment procedural due process rights. We do note, however, that "[d]ue process is not a talismanic term which guarantees review in this [C]ourt of procedural errors correctable by the administrative tribunal." Marrero v. INS, 990 F.2d 772, 778 (3d Cir. 1990) (citations and internal quotation marks omitted).

[2] On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice, and its enforcement functions were transferred to the Department of Homeland Security, pursuant to sections 441 and 471 of the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135.

which the term of imprisonment [is] at least one year."). At his September 17, 1997, removal proceeding, a United States Immigration Judge ("IJ") ordered Mr. Bonhometre removed to Haiti. He then appealed to the Board of Immigration Appeals ("BIA"), raising two issues: (1) the IJ erred in determining that he was deportable because his criminal offense occurred before the enactment of section 440 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"); and (2) AEDPA is unconstitutional. The BIA dismissed his appeal.

Despite the removal order that had been filed against him, the INS released Mr. Bonhometre in October, 2000. It was not until he attempted to renew a work permit in May, 2003, that the Government again took him into custody. Mr. Bonhometre thereafter filed a habeas corpus petition *pro se*. The District Court appointed counsel for him, and directed counsel to amend the habeas corpus petition. In this amended petition, Mr. Bonhometre asserted that he was denied procedural due process when the IJ failed to advise him that he could have asked for relief under sections 212(c) and 212(h) of the INA,[3] as well as under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). The District Court found that he had not exhausted the available administrative remedies before the BIA, but concluded that his procedural due process claim was "wholly collateral" to the relevant INA review provisions, and that the BIA had no expertise in adjudicating such a procedural due process claim. The District Court therefore concluded that it had subject matter jurisdiction pursuant to the Supreme Court's holding in Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207-16 (1994), despite Mr. Bonhometre's failure to exhaust, and, after considering the merits of his Fifth Amendment challenge, granted his petition. The Government appealed, and argument was heard by this Court on March 8, 2005.

---

[3]Both of these provisions were repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("IIRIRA").

4

## II. JURISDICTION AND STANDARD OF REVIEW

During the pendency of our deliberations on this matter, Congress amended section 1252 of Title 8 of the United States Code via the Real ID Act of 2005, Pub. L. 109-13, 119 Stat. 231 ("Real ID Act"). Under the new judicial review regime imposed by the Real ID Act, a petition for review is now the sole and exclusive means of judicial review for all orders of removal except those issued pursuant to 8 U.S.C. § 1225(b)(1). See 8 U.S.C. § 1252(a)(5) (1999 & Supp. 2005). Our jurisdiction was also enlarged, as we now have the authority to consider constitutional claims or questions of law raised in a criminal alien's petition for review. 8 U.S.C. § 1252(a)(2)(D) (2005); see Papageorgiou v. Gonzales, ___ F.3d ____, 2005 WL 1490454, *2 (3d Cir. Jun. 24, 2005) (noting that, while the Real ID Act permits judicial review of constitutional claims or questions of law raised by criminal aliens, this Court's jurisdiction remains nonetheless subject to the unamended jurisdictional limitations of 8 U.S.C. § 1252). Moreover, all habeas corpus petitions brought by aliens[4] that were pending in the district courts on the date the Real ID Act became effective (May 11, 2005) are to be converted to petitions for review and transferred to the appropriate courts of appeals. See Real ID Act, Pub.L. 109-13, Div. B, Title I, § 106(c). These modifications effectively limit all aliens to one bite of the apple with regard to challenging an order of removal, in an effort to streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review). See H.R. Conf. Rep. No. 109-72, at 173-75 (2005).

In the Real ID Act, however, the Congress was silent as to what was to be done with an appeal from a district court habeas decision that is now pending before a court of appeals.

---

[4]This provision applies only to aliens who are challenging an order of removal via habeas corpus. An alien challenging the legality of his *detention* still may petition for habeas corpus. See H.R. Conf. Rep. No. 109-72, at 175 (2005).

5

Despite this silence, it is readily apparent, given Congress' clear intent to have all challenges to removal orders heard in a single forum (the courts of appeals), id. at 174, that those habeas petitions that were pending before this Court on the effective date of the Real ID Act are properly converted to petitions for review and retained by this Court. We thus generally have jurisdiction to consider such a petition pursuant to section 242(a) of the INA. 8 U.S.C. § 1252(a) (1999 & Supp. 2005).[5]

Even though this habeas appeal has turned into a petition for review, our standard of review remains the same. We review whether Mr. Bonhometre's procedural due process rights were violated *de novo*, Abdulrahman v. Ashcroft, 330 F.3d 587, 596-97 (3d Cir. 2003), which is the same standard that would have been applied to our review of the District Court's grant of his petition for habeas corpus, Ruggiano v. Reish, 307 F.3d 121, 126 (3d Cir. 2002).

## III. DISCUSSION

---

[5] We note further that some habeas petitions pending before the district courts of this Circuit may not be properly before us as converted-petitions for review. See 8. U.S.C. § 1252(b)(2) (1999) ( "The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."); compare 28 U.S.C. § 2241(a) (1994) ("Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their *respective jurisdictions*.") (emphasis added). Such is the case here, as Mr. Bonhometre's immigration hearing was conducted within the jurisdiction of the First Circuit, but he is detained within the boundaries of this Circuit. However, given that this case has been thoroughly briefed and argued before us, and given that Mr. Bonhometre has waited a long time for the resolution of his claims, we believe it would be a manifest injustice to now transfer this case to another court for duplicative proceedings. Cf. Nwaokolo v. INS, 314 F.3d 303, 306 n.2 (7th Cir.2002) (holding that 8 U.S.C. § 1252(b)(2) is a venue provision and hence non-jurisdictional).

6

In view of the atypical procedural posture of this case and the effect of the Real ID Act, we will consider the District Court's opinion to be non-existent, and will address the procedural due process claims raised by Mr. Bonhomotre in his opening brief to the District Court as if they were raised in a petition for review before us in the first instance. In his now-converted-Petition for Review, Mr. Bonhometre contends that the agency violated his Fifth Amendment due process rights by failing to advise him that he had the opportunity to request relief from his removal order under sections 212(c) and 212(h) of the INA, as well as under the CAT. These claims were not raised before the BIA at any point.

**A.**

We begin, as we always must when reviewing agency determinations, with a determination of whether we have subject matter jurisdiction to consider Mr. Bonhometre's claims. As a general rule, an alien must exhaust all administrative remedies *available to him as of right* before the BIA as a prerequisite to raising a claim before us. 8 U.S.C. § 1252(d)(1) (1999) (emphasis added); Yan Lan Wu v. Ashcroft, 393 F.3d 418, 422 (3d Cir. 2005). To exhaust a claim before the agency, an applicant must first raise the issue before the BIA or IJ, Alleyne v. INS, 879 F.2d 1177, 1182 (3d Cir. 1989), so as to give it "the opportunity to resolve a controversy or correct its own errors before judicial intervention." Zara v. Ashcroft, 383 F.3d 927, 931 (9th Cir. 2004). The Supreme Court has instructed that "[t]he doctrine of administrative exhaustion should be applied with a regard for the particular administrative scheme at issue." Weinberger v. Salfi, 422 U.S. 749, 765 (1975). We thus remain cognizant of the fact that the exhaustion terms of section 1252(d)(1) must be examined with Congress's intent concerning the provision's scope in mind, especially in light of the modifications made to the section by the Real ID Act.[6]

---

[6] We note at the outset that "[t]here is agreement among the circuits that have addressed the issue that exceptions do apply to § 1252(d)(1), although the contours of such exceptions remain to be

We have previously rejected an exception to section 1252(d)(1)'s requirement of administrative exhaustion before the BIA based on futility.  See Duvall v. Elwood, 336 F.3d 228, 234 (3d Cir. 2003) (rejecting the argument that exhaustion is excused where further administrative proceedings would be futile because the BIA had already definitively decided the issue); see also Nyhuis v. Reno, 204 F.3d 65, 69 (3d Cir. 2000) (noting that a statute with "a jurisdictional requirement . . . by definition cannot be subject to a futility exception").  As we see it, a claim is "available as of right" if, at the very least, (1) the alien's claim was within the jurisdiction of the BIA to consider and implicated agency expertise,[7] and (2) the agency was capable of granting the remedy sought by the alien.[8]  It is uncontested that Mr. Bonhometre failed to bring his procedural due process claims of error to the BIA.  Therefore, he would be excused from exhausting his claims before the BIA if either of these prerequisites were absent.

Mr. Bonhometre's claims, though argued in the language of procedural due process, essentially claim that the IJ failed in

fully developed."  Sun v. Ashcroft, 370 F.3d 932, 943 (9th Cir. 2004).

[7] See Marrero, 990 F.2d at 778 (noting that exhaustion would not be required where the BIA did not have jurisdiction to adjudicate a particular claim); Vargas v. U.S. Dept. of Immigration and Naturalization, 831 F.2d 906, 908 (9th Cir. 1987) (holding that certain due process claims "are exempt from [exhaustion] because the BIA does not have jurisdiction to adjudicate constitutional issues" and "[a]lthough due process claims are generally exempt from the exhaustion requirement, we do not review 'procedural errors correctable by the administrative tribunal'").

[8] See Bak v. INS, 682 F.2d 441, 443 (3d Cir. 1982) ("the Board could have reversed the immigration judge, and thus exhaustion is necessary under section 1105a(c)"); see also Sewak v. I.N.S., 900 F.2d 667, 670 (3d Cir. 1990) (noting that "Sewak's due process claim amounts to a procedural error correctable through the administrative process").

8

its duty to completely develop this case, and requests remand to correct this alleged error. See Vargas 831 F.2d at 908 ("The requirement that Petitioner exhaust his claims before appealing them to this Court applies even though Petitioner claims the BIA's procedural errors violated his right to due process"). Clearly, the BIA has the ability to conduct *de novo* review of an immigration proceeding and the subsequent decision of the IJ, see, e.g., Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001), and has sufficient expertise in this area to be eminently capable of addressing whether the IJ properly explored all avenues of relief that were available. See In re Cordova, 22 I. & N. Dec. 966, 970 (BIA 1999) ("An [IJ] has a duty to inform aliens of potential forms of relief for which they are apparently eligible, including voluntary departure"); see also In re Po Shing Yeung, 21 I. & N. Dec. 610, 624-255 (BIA 1997) (stating that procedural errors, such as exclusion of evidence or failure to advise that there was a right to counsel, are typically cured simply by holding a new hearing in compliance with due process requirements); Matter of Santos, 19 I. & N. Dec. 105, 111 (BIA 1984) (discussing whether or not a petitioner was prejudiced by the IJ's failure to advise him of free legal services at the start of the hearing). Furthermore, it is beyond debate that, had the BIA concluded that the IJ's conduct during the immigration hearing did not fulfill his obligation to completely develop the record under the immigration regulations, it could have remanded for a new trial. Mr. Bonhometre's procedural due process claims thus could have been argued before the BIA, and his failure to do so is thus fatal to our jurisdiction over this petition.

**B.**

Even if we were to consider Mr. Bonhometre's claims on the merits, we still would not grant relief. To prevail on a procedural due process challenge to a decision by the BIA, an alien must make an initial showing of substantial prejudice. See De Zavala v. Ashcroft, 385 F.3d 879, 883 (5th Cir. 2004) (concluding that an alien had failed to establish that she was substantially prejudiced by the procedural error she advanced) (internal quotation marks omitted). Therefore, if Mr. Bonhometre cannot demonstrate that he was eligible for relief

9

under sections 212(c) and 212(h) of the INA, or under the CAT, no procedural due process claim can lie.[9]

Mr. Bonhometre first claims that the IJ failed to inform him of the possibility of relief under former section 212(c) of the INA. Prior to its repeal in 1996, this section stated:

> Aliens lawfully admitted for *permanent residence* who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.

8 U.S.C. § 1182(c) (1994) (repealed 1996) (emphasis added). Because it is undisputed that Mr. Bonhometre was a lawful *temporary* alien at the time of his removal hearing, he was not, by the express language of the statute, eligible for a section 212(c) waiver.

Mr. Bonhometre's claim that he was eligible for section 212(h) "extreme hardship waiver" fares little better. Prior to its repeal, section 212(h) gave the Attorney General discretion to waive an alien's deportation *if that alien was not an aggravated felon*, and if his departure would cause extreme hardship to a United States citizen that was his spouse, parent or child. See 8 U.S.C. § 1182(h) (1994) (repealed 1996). In 1996, Congress

---

[9] At the outset, we note that the majority of the courts of appeals, including our own, agree that there is no constitutional right to be informed of possible eligibility for discretionary relief. See United States v. Torres, 383 F.3d 92, 105-06 (3d Cir. 2004); see also United States v. Aguirre-Tello, 353 F.3d 1199, 1205 (10th Cir. 2004) (en banc); United States v. Lopez-Ortiz, 313 F.3d 225, 231 (5th Cir. 2002), cert. denied, 537 U.S. 1135 (2003); Smith v. Ashcroft, 295 F.3d 425, 430 (4th Cir. 2002); Oguejiofor v. Attorney General, 277 F.3d 1305, 1309 (11th Cir. 2002); Escudero-Corona v. INS, 244 F.3d 608, 615 (8th Cir. 2001) (quoting Ashki v. INS, 233 F.3d 913, 921 (6th Cir. 2000)).

made sweeping changes to the immigration law, including the institution of a new definition of aggravated felony that unambiguously applied retroactively to all past convictions. See IIRIRA, section 328(a) (mandating that the amendments relating to aggravated felonies "shall apply to actions taken on or after the date of enactment of this Act, *regardless of when the conviction occurred*") (emphasis added); see also INS v. St. Cyr, 533 U.S. 289, 318-19 (2001) (explicitly noting that Congress clearly stated that the amended definition of "aggravated felony" is to apply retroactively); accord Landgraf v. USI Film Prods., 511 U.S. 244, 268 (1994) ("[A] requirement that Congress first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness").[10]   Since, under the new definition, Mr. Bonhometre is an aggravated felon, he thus would not have qualified for section 212(h) relief, regardless of any hardship that may befall his wife or children as a result of his removal.

Finally, Mr. Bonhometre cannot argue that the IJ's failure to advise him of potential CAT eligibility was a procedural due process violation, because there are no facts in the record to support a CAT claim.  An applicant is entitled to protection under the CAT if he establishes that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Wang v. Gonazles, 405 F.3d 134, 139 (3d Cir. 2005) (quoting 8 C.F.R. § 1208.16(c)(2) (2005)).[11]   There is

_____

[10] We also note that Congress' decision to repeal section 212(h) waivers retroactively is rationally-related to a legitimate government purpose.  See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 17 (1976).

[11] "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such

11

nothing in the administrative record that was before the IJ or BIA suggesting that Mr. Bonhometre would have qualified for relief under the CAT, nor does he point to any evidence demonstrating as much before us now. The fact that the INS used a "pre-regulatory administrative process" to determine CAT eligibility prior to promulgation of the formal regulations now used does not mean *ipso facto* that a CAT claim exists. Without supporting evidence, such a claim has no substance.

### IV. CONCLUSION

Despite the unusual posture under which this case arrived before us, we conclude that we are without jurisdiction to consider the arguments raised in Mr. Bonhometre's Petition for Review. We reiterate that, had these same issues arisen in the context of a habeas corpus petition, our conclusion would be the same. Therefore, we deny the Petition and reverse the District Court's grant of habeas corpus.

---

pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1) (2005).

12