

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2007

# Gilkes v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1122

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Gilkes v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1077.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1077

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-1122
_____

CURVAN WAYNE GILKES,

       Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
BUREAU OF IMMIGRATION & CUSTOMS ENFORCEMENT

_____

Civil Action No. 03-cv-01417
Transferred by United States District Court
for Middle District of Pennsylvania
Pursuant to Real ID Act of 2005
for Consideration as a Petition for Review
BIA No. A14-893-846
(Honorable Christopher C. Conner)

_____

Argued April 24, 2007
Before: SCIRICA, *Chief Judge,* FUENTES, and ALARCÓN,[*] *Circuit Judges.*

(Filed May 22, 2007)

RONALD A. KRAUSS, ESQUIRE (Argued)
Assistant Federal Public Defender-Appeals
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
   Counsel for Petitioner

DARYL F. BLOOM, ESQUIRE (Argued)

_____

[*]The Honorable Arthur L. Alarcón, Senior Judge of the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

Assistant United States Attorney
United States Attorney's Office
Middle District of Pennsylvania
228 Walnut Street, Suite 220
Harrisburg, Pennsylvania 17108
          Counsel for Respondent

_____

OPINION OF THE COURT

_____

ALARCÓN, *Circuit Judge*.

Curvan Wayne Gilkes (the "Petitioner") seeks review of the Immigration Court's

determination that he failed to demonstrate that he is not subject to removal.  He claims

that he is entitled to citizenship under 8 U.S.C. § 1409(c) because his mother was a

citizen of the United States when he was born out of wedlock as the result of an

adulterous affair, while she was married to Ronald Everton Gilkes.

The District Court denied the Government's motion to transfer this matter to the

Second Circuit pursuant to § 106(c) of the REAL ID Act and 8 U.S.C. § 1252(b)(2).

Instead, it transferred the petition to this Circuit.  We will remand this matter to the

District Court for an evidentiary hearing to resolve, in the first instance, the disputed

factual issue regarding whether the Petitioner was born out of wedlock.

**I**

**A**

The present record shows that the Petitioner's mother, Gloria Anita Gilkes ("Mrs. Gilkes"), was born in the United States. She moved to Barbados in 1933, at the age of seven. Mrs. Gilkes married Ronald Everton Gilkes ("Mr. R.E. Gilkes"), a Barbados citizen, in 1945. The Petitioner was born in Barbados on July 12, 1955. Mr. R.E. Gilkes is named as the Petitioner's father on his birth certificate and his baptismal certificate.

On June 15, 1956, Mr. R.E. Gilkes filed a petition in the Court for Divorce and Matrimonial Causes in Barbados for the dissolution of his marriage with Mrs. Gilkes on the ground of adultery. The dissolution petition contains the following allegations:

1. That on the 22nd day of March 1945, the petitioner was lawfully married to Gloria Anita Gilkes, then Gloria Anita Cumberbatch, Spinster, (hereinafter called "the Respondent") at All Saints Church in the parish of Saint Peter and Island of Barbados.

2. That after the said marriage the petitioner and respondent lived and cohabited at Rose Hill in the parish of Saint Peter and Island of Barbados and there is issue of the said marriage now living two children, namely, Claudette Izolo Gilkes, born on the 22nd day of June 1946, and Hugh Rodney Rubinstein Gilkes, born on the 9th day of March 1950.
   . . . .

5. That the respondent has frequently committed adultery with Arnold Sandiford.

6. That from the month of Marth 1954 to the month of May 1956 at Rose Hill in the parish of Saint Peter aforesaid the respondent frequently committed adultery with the said Arnold Sandiford.

7. That on the 12th day of July 1955 the respondent was delivered of a child named "Curvan Wayne" the paternity of whom is not admitted.

3

The petitioner therefore prays that the discretion of the court may be exercised in his favor and:

1.     That his said marriage may be dissolved.
2.     That he may have the custody of the children Claudette Izolo Gilkes and Hugh Rodney Rubinstein Gilkes.

. . . .

In an accompanying affidavit, Mr. R.E. Gilkes admitted the statements contained in paragraphs 1, 2, 3, 4, and 7 were true. He further alleged that the statements contained in paragraph 5 and 6 were true to the best of his knowledge, information, and belief.

On October 5, 1956, the Barbados Court dissolved the marriage "by reason that since the celebration [of the marriage] the said respondent has been guilty of adultery . . . ." The Court also ordered that "Claudette Izolo Gilkes and Hugh Rodney Rubinstein Gilkes the children, issue of the marriage between [Mr. R.E. Gilkes] and [Gloria Anita Gilkes], do remain in the custody of [Mr. R.E. Gilkes] until further order of the Court . . . ." The decree of the Barbados Court did not refer to the paternity of Curvan Wayne Gilkes.

**B**

In 1967, the Petitioner entered the United States as a lawful permanent resident. The Petitioner was convicted in the New York Supreme Court on January 4, 2001, of the crime of criminal sale of a controlled substance in the fifth degree, in violation of § 220.31 of the New York State Penal Code.

Based on this conviction, the former Immigration and Naturalization Service commenced removal proceedings against the Petitioner by filing a Notice to Appear

4

("NTA") on April 4, 2001. The NTA charged that the Petitioner was removable from the United States pursuant to §§ 237(a)(2)(A)(iii) and (a)(2)(B)(i) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. §§ 1227(a)(2)(A)(iii) and (a)(2)(B)(i), as an alien convicted of an aggravated felony and as an alien convicted of a controlled substance offense. The Petitioner challenged his removal by claiming that he was a derivative citizen of the United States pursuant to 8 U.S.C. § 1401(a)(7) (1952). Under the 1952 version of § 1401(a)(7), one could obtain United States citizenship at birth if he or she was born outside of the United States and had one United States citizen parent who, prior to the birth of this person, was physically present in the United States for periods totaling not less than ten years, and at least five of which were after attaining the age of fourteen.[2]

On October 16, 2001, an Immigration Judge ("IJ") found that the Petitioner was not a derivative citizen of the United States. The IJ ordered that the Petitioner be removed to Barbados. The Petitioner appealed the decision of the IJ to the Board of

---

[2] 8 U.S.C. § 1401(a)(7) (1952) provides in relevant part that the following persons shall be nationals and citizens of the United States at birth:

> [A] person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years . . . .

Immigration Appeals ("BIA"). The BIA reversed the IJ's decision. It concluded that the IJ erred in construing the applicable law regarding the citizenship of a child born abroad when one parent is a United States citizen.

On April 30, 2002, the IJ rejected the Petitioner's derivative citizenship claim. It ordered him removed from the United States. Following this decision, the Petitioner filed a motion to reopen. On June 11, 2002, the IJ denied the Petitioner's motion to reopen. The Petitioner appealed the IJ's decision to the BIA. On July 25, 2002, the BIA dismissed the Petitioner's appeal for lack of jurisdiction because the notice of appeal was untimely filed. On August 21, 2002, the Petitioner filed a motion to reconsider. This motion was denied by the BIA on October 3, 2002.

## C

On June 1, 2003, the Petitioner filed an application for Certificate of Citizenship, Form N-600, with the Bureau of Citizenship and Immigration Services ("BCIS"). On August 27, 2003, the BCIS denied the Petitioner's application for a certificate of citizenship. The BCIS informed the Petitioner that he had thirty days to file an appeal with the Administrative Appeals Unit ("AAU"). The appendix contains a notice of appeal to the AAU from the denial of the Petitioner's application for a Certificate of Citizenship, Form N-600. It is not time stamped.[3]

---

[3]The appendix does not reflect whether the AAU considered the Petitioner's appeal and if it rejected it.

On August 19, 2003, the Petitioner filed an application for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania. In his brief in support of this application, the Petitioner contended that "he is a citizen [of the United States] because of [his] USA born mother . . . ." Brief of Petitioner at 6, *Gilkes v. Ridge*, No. 4:03-CV-1417 (M.D. Pa. Aug. 19, 2003). The Petitioner alleged that "[t]he immigration court and the BIA discriminated against the Petitioner's mother and her offspring which violate[d] the equal [protection] clause of the Fifth Amendment of the Constitution of the United States." *Id.* The Petitioner did not rely on any specific statutory provision to support his claims. In support of his application, the Petitioner filed his mother's affidavit in which she alleged: "I took care of [the Petitioner] from the time he was born until he was eighteen (18) years old with no help from his father. Ronald Everton Gilkes." Response Brief of Petitioner at Attachment D, *Gilkes v. Ridge*, No. 4:03-CV-1417 (M.D. Pa. Sept. 29, 2003).

On December 4, 2003, the District Court denied the Petitioner's application for habeas corpus relief. It held that there was no basis for exercising habeas corpus jurisdiction because the Petitioner had failed to allege a violation of the Constitution or the laws of the United States. It also concluded that under 8 U.S.C. § 1252(b)(1), it lacked the jurisdiction to transfer this matter to the Court of Appeals as a petition for review because it was filed more than thirty days after the final order of removal.

7

The Petitioner filed a timely appeal in this Court on December 11, 2003. In his appeal to this Court, the Petitioner raised three separate claims. The Petitioner's first claim asserted that the BIA erred in its application of 8 U.S.C. § 1401(a)(7) (1952) to the facts of his case. The Petitioner's second claim asserted for the first time that he was entitled to United States citizenship pursuant to 8 U.S.C. § 1431 (1994). Under the 1994 version of § 1431, a child born outside of the United States with one alien parent and one United States citizen parent may become a citizen of the United States if the alien parent is naturalized and if certain other conditions are met.[4] The Petitioner's third claim asserted for the first time that he was entitled to United States citizenship as he owed

---

[4]8 U.S.C. § 1431 (1994) provides that:

> (a) A child born outside of the United States, one of whose parents at the time of the child's birth was an alien and the other of whose parents then was and never thereafter ceased to be a citizen of the United States, shall, if such alien parent is naturalized, become a citizen of the United States, when —

> > (1) such naturalization takes place while such child is under the age of eighteen years; and
> > (2) such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of naturalization or thereafter and begins to reside permanently in the United States while under the age of eighteen years.

> (b) Subsection (a) of this section shall apply to an adopted child only if the child is residing in the United States at the time of naturalization of such adoptive parent, in the custody of his adoptive parents, pursuant to a lawful admission for permanent residence.

8

permanent allegiance to the United States, evidenced by his registration for the draft in 1972. On July 19, 2004, this Court reversed the District Court's decision and remanded the matter to the District Court for a decision on the merits of the Petitioner's § 1401(a)(7) claim. *Gilkes v. Ridge*, No. 03-4889, slip. op. at 10 (3rd Cir. May 26, 2004). This Court concluded that the Petitioner had exhausted his administrative remedies with respect to his § 1401(a)(7) claim. *Id.* It also concluded that the Petitioner failed to exhaust his administrative remedies with respect to his claim of citizenship under 8 U.S.C. § 1431 (1994) and his non-citizen nationality claim that he owed permanent allegiance to the United States. *Id.* Accordingly, this Court dismissed the unexhausted claims. *Id.* at 10-11.

Upon remand, the Petitioner maintained that he automatically acquired United States citizenship under the 2001 version of 8 U.S.C. § 1431. The District Court concluded that the 2001 version of 8 U.S.C. § 1431 did not apply because the Petitioner was not under the age of eighteen on the statute's effective date. *Gilkes v. Ridge*, No. 4:03-CV-1417, at 3-4 (M.D. Pa. Oct. 8, 2004). The Petitioner also argued for the first time that he was entitled to citizenship under 8 U.S.C. § 1432(a)(3), (5). The District Court concluded that the 1988 verison of 8 U.S.C. § 1432(a) controlled the Petitioner's claim. *Gilkes v. Ridge*, No. 4:03-CV-1417, at 4-5 (M.D. Pa. Oct. 8, 2004). Under that section, a child born outside of the United States of alien parents could become a citizen

of the United States upon the fulfillment of certain conditions.[5] The District Court held

that § 1432(a)(3), (5) "does not render [the Petitioner] a derivative citizen" because "he

was not born of alien parents." *Gilkes v. Ridge*, No. 4:03-CV-1417, at 5 (M.D. Pa. Oct. 8,

2004). Accordingly, the District Court denied the Petitioner's application for habeas

corpus relief on October 8, 2004. *Id.* at 6.

The Petitioner filed an appeal to this Court on October 27, 2004. For the first time

he contended that he was entitled to derivative citizenship under 8 U.S.C. § 1409(c).

Under § 1409(c), a person born after December 23, 1952, outside the United States and

out of wedlock, may derive United States citizenship from his or her United States citizen

---

[5]8 U.S.C. § 1432(a)(3), (5) (1988) (repealed 2001) provided:

(a) A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:

. . . .

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

. . . .

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

mother if certain conditions are met.[6] On April 26, 2005, this Court issued an order which states: "This matter is hereby remanded to the District Court for consideration of Gilkes' claim that he is entitled to derivative citizenship under 8 U.S.C. § 1409(c)."

After this Court's mandate was issued, the Petitioner's mother filed an affidavit dated June 15, 2005, in a Barbados court, alleging that "Ronald Everton Gilkes is not the father of my son Curvan Wayne Gilkes."

While this matter was pending in the District Court, the REAL ID Act became effective. Section 106(c) of the REAL ID Act provides in relevant part that "[i]f an alien's case, brought under section 2241 of title 28, United States Code, and challenging a final administrative order of removal, deportation, or exclusion, is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case . . . to the court of appeals for the circuit in which a petition for review could have been properly filed under . . . 8 U.S.C. 1252[(b)(2)]." 8 U.S.C. § 1252 (Transfer of Cases Note) (codifying REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, Title I, § 106(c), 119

---

[6]8 U.S.C. § 1409(c) reads as follows:

> Notwithstanding the provision of subsection (a) of this section, a person born, after December 23, 1952, outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States or one of its outlying possessions for a continuous period of one year.

11

Stat. 231, 311 (2005)). Section 1252(b)(2) provides in relevant part that "[t]he petition for review [of orders of removal] shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."

On July 29, 2005, the Government filed a motion to transfer this matter to the United States Court of Appeals for the Second Circuit pursuant to Section 106(c) of the REAL ID Act and 8 U.S.C. § 1252(b)(2). On November 7, 2005, the District Court denied the Government's motion to transfer this matter to the United States Court of Appeals for the Second Circuit because proceedings had previously been initiated before this Court. In addition, it ordered the Clerk of Court to transfer this matter to the United States Court of Appeals for the Third Circuit pursuant to § 1252(b)(5)(A).[7]

## II

The Petitioner requests that this Court grant his petition for review under 8 U.S.C. § 1409(c) and direct the Government to take all necessary steps to grant his application for citizenship. He argues that the evidence in the present record is sufficient to support a finding that he was born out of wedlock as the product of his mother's adulterous affair. In short, he maintains that a child born to a woman married to a man who is not the

---

[7]8 U.S.C. § 1252(b)(5)(A) provides:

> If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.

child's biological father should be considered "born out of wedlock." Alternatively, he requests that this Court should

> remand the case to the District Court with instructions to hold the matter in abeyance to permit [the Petitioner] the opportunity to apply to the Barbados courts for an order *nunc pro tunc*, stating that [the Petitioner] was born out of wedlock, and to reconsider the merits of [the] Petition in light of that *nunc pro tunc* order.

Brief of Petitioner at 40.

We review *de novo* constitutional claims or questions of law presented in an application for a writ of habeas corpus that has been converted to a petition for review under 8 U.S.C. § 1252(a)(2)(D). *Kamara v. Attorney General*, 420 F.3d 202, 210-11 (3rd Cir. 2005); *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3rd Cir. 2005).

## A

Before determining whether we should consider the merits of the Petitioner's derivative citizenship claim under § 1409(c), we must address the Government's argument that "this Court lacks jurisdiction to address the merits of Gilkes's claim and should transfer the petition to the court of appeals in which a petition for review could be properly filed, i.e. the Second Circuit." Brief of Respondent at 18. We disagree with the Government's contention that 8 U.S.C. § 1252(b)(2) of the REAL ID Act limits this Court's jurisdiction over this matter. Section 1252(b)(2) provides as follows: "the petition for review [of orders of removal] shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." The

13

Petitioner's removal proceedings were heard and completed by an IJ in Napanoch, New York. We agree with the Seventh Circuit that § 1252(b)(2) contains a venue provision — it is not jurisdictional. *Nwaokolo v. I.N.S.*, 314 F.3d 303, 306 n.2 (7th Cir. 2002).

In *Bonhometre*, the immigration proceedings were conducted in the First Circuit, but the petitioner filed his petition in this Circuit, where he was being detained. *Bonhometre*, 414 F.3d at 446 n.5. This Court declined to transfer the matter to the First Circuit. *Id.* The Court reasoned as follows: "[G]iven that this case has been thoroughly briefed and argued before us, and given that Mr. Bonhometre has waited a long time for the resolution of his claims, we believe it would be a manifest injustice to now transfer this case to another court for duplicative proceedings." *Id*.

In this case, the Petitioner's derivative citizenship claim has been before this Court since December 11, 2003. Twice before, we have ordered a remand for further proceedings in the District Court. Once again, briefs have been filed by the parties and the case has been argued before us. In light of the procedural history of this matter in this Circuit, we are persuaded that it would be unreasonable for us to transfer this matter to another venue for a review of the Petitioner's claim.

**B**

The Petitioner now contends that the evidence shows that he acquired United States citizenship through his mother under § 1409(c). Section 1409(c) provides as follows in pertinent part:

14

> [A] person born, after December 23, 1952, outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States or one of its outlying possessions for a continuous period of one year.

There is no dispute between the parties that the Petitioner was born after December 23, 1952, in Barbados, that his mother was a citizen of the United States on the date he was born, and that she had been physically present in the United States for a continuous period of one year. The parties do, however, dispute whether Mr. Gilkes was born "out of wedlock."

The Petitioner argues that the conclusion that Mr. R.E. Gilkes is not his biological father "is irrefutable as a matter of fact." Brief of Petitioner at 20. He relies on the following evidence to support this contention:

One.        In Mr. R.E. Gilkes's petition for a dissolution, he alleged that his wife had an adulterous affair beginning more than a year before the Petitioner was born and continued until after his birth date.

Two.        He also alleged that the only issue of the marriage were Claudette and Hugh.

Three.        Mr. R.E. Gilkes further alleged that the paternity of Curvan Wayne Gilkes is "not admitted."

Four.        Mr. R.E. Gilkes only prayed for the custody of Claudette and Hugh.

Five.        The Barbados court granted the petition for dissolution on the ground of adultery.

15

| | |
|---|---|
| Six. | The court awarded custody of Claudette and Hugh to Mr. R.E. Gilkes. |
| Seven. | Mrs. Gilkes filed a sworn affidavit to a Barbados court in which she alleged that Mr. R.E. Gilkes was not the father of Curvan Wayne Gilkes, after the Petitioner claimed on January 19, 2005 that he was entitled to citizenship under § 1409(c). |

In challenging the Petitioner's contention that Mr. R.E. Gilkes was not his biological father, the Government asserted in its responsive brief that "there is significant doubt regarding [the Petitioner's] paternity." Brief of Respondent at 28. The Government points to the following facts in support of this argument:

| | |
|---|---|
| One. | Mrs. Gilkes married Mr. R.E. Gilkes, a citizen of Barbados, on March 22, 1945. |
| Two. | The Petitioner was born on July 12, 1955. |
| Three. | Mr. R.E. Gilkes is named as the Petitioner's father in his birth certificate. |
| Four. | Mr. R.E. Gilkes is named as the Petitioner's father on his baptismal certificate. |
| Five. | In his application for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241 on August 19, 2003, the Petitioner declared under penalty of perjury that his mother "married the Petitioner's father on March 22, 1945." |
| Six. | The Petitioner filed an affidavit signed by his mother, in support of his application for habeas corpus relief, in which she swore that Curvan Wayne Gilkes's father was Ronald Everton Gilkes. |

Thus, contrary to the Petitioner's argument, the question whether Mr. R.E. Gilkes is his father is clearly not an "irrefutable fact." It is highly contested.

16

No court has resolved the factual question whether Mr. R.E. Gilkes is the Petitioner's father. The Barbados Court for Divorce and Matrimonial Causes did not make a finding regarding who was the biological father of the Petitioner. Because Petitioner's claim under § 1409(c) was still pending in the District Court when the REAL ID Act was enacted, the District Court transferred this matter to this Court before holding an evidentiary hearing to resolve the paternity issue.

Our jurisdiction in reviewing a claim that a person is a national of the United States is limited to petitions where "no genuine issue of material fact about the petitioner's nationality is presented." 8 U.S.C. § 1252(b)(5)(A). Section 1252(b)(5)(B)[8] expressly provides that if "the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim." Section 1252(b)(5)(B) was not affected by the enactment of the REAL ID Act.

---

[8] 8 U.S.C. 1252(b)(5)(B) provides:

> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28.

17

Because conflicting evidence has been presented by the Petitioner regarding whether Mr. R.E. Gilkes was his biological father, we lack the jurisdiction under § 1252(b)(5)(B) to make a finding on this factual question. Accordingly, we will remand this matter to the District Court with instructions that it make findings regarding whether Mr. R.E. Gilkes is the biological father of the Petitioner. Upon such determination this Court will have the jurisdiction to address the legal questions presented in this petition.