

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2008

# Mejia-Juarez v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4726

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Mejia-Juarez v. Atty Gen USA" (2008). *2008 Decisions.* Paper 828.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/828

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4726
_____

RENE HUGO MEJIA-JUAREZ,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
Agency No. A98 493 813
Immigration Judge: Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 16, 2008
Before: SLOVITER, STAPLETON and COWEN, Circuit Judges

(Opinion filed July 18, 2008  )
_____

OPINION
_____

PER CURIAM

Rene Hugo Mejia-Juarez petitions for review of an order of the Board of

Immigration Appeals (BIA), which affirmed an order of the Immigration Judge (IJ),

thereby denying him relief from removal.  We will deny the petition.[1]

Mejia, a citizen of El Salvador, entered the United States in 2001 without inspection.  He subsequently conceded his removability and sought statutory withholding of removal and relief under the Convention Against Torture (CAT).[2]  Mejia testified that in 2001 two police officers, who were brothers of a murder victim, Jorge Romero, came to his relative's house and accused him of the murder.  A.R. 103-04.  The officers took Mejia out into the yard and tried to coerce a confession by beating him.  A.R. 104. On cross-examination, Mejia agreed that the officers were acting "outside of the scope of their authority." A.R. 113-14.  The officers subsequently took Mejia to the police station, where nothing further happened to Mejia while he was detained for 24 hours.  A.R. 105-06.  Mejia presented an affidavit from Dominga Ayala, who was apparently a witness to the crime.  A.R. 107.  Ayala stated that although the victim's brothers kept insisting that she knew Mejia was the assailant, Mejia was definitely not the assailant.  A.R. 303-04.

After his arrest in El Salvador, Mejia appeared in court and was given a second court date.  A.R. 106.  Mejia asserts that at some point the charges were dismissed, but

---

[1] Mejia filed, within thirty days of the Board's decision, a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York.  That Court transferred the petition here in the interests of justice pursuant to 28 U.S.C. § 1631. We consider the habeas petition to be a timely-filed petition for review of the Board's decision.

[2] He did not seek asylum because the one-year period for seeking relief had expired.

2

that he feared the brothers would reinstate the charges. A.R. 115-17[3]. The victim's brothers repeatedly told Mejia and his relatives that they would kill him and that they would take him to jail "so [that his] family would not suspect." A.R. 106. Mejia left El Salvador in 2001, and in 2005, Interpol issued a warrant for Mejia's arrest. A.R. 297-301.

Although Mejia submitted to the IJ numerous articles discussing gang-related violence in El Salvador, his written application for relief, A.R. 287-95, does not reference any fear of harm from gangs nor any fear that he will be harmed because he is perceived to be a gang member. At the hearing, Mejia testified that he was going to join a gang in El Salvador at one point, and that a friend started tattooing "MS"[4] on his back, but that he ultimately decided not to join the gang and did not complete the tattoo. A.R. 107-09.[5] Mejia's wife[6] then testified that if a gang thinks he is a former gang member he will be killed, and that she also fears that the victim's family will kill him. A.R. 123. In closing arguments, counsel asserted that Mejia could be killed in prison by the victim's brothers, or by gang members because of his tattoo. A.R. 127-28. The IJ noted, and counsel did not dispute, that Mejia had not testified regarding a fear of gangs. A.R. 128-30. In response,

---

[3] As the IJ noted, Mejia's testimony regarding whether the charges were dismissed or whether he was supposed to appear in court again was somewhat contradictory. A.R. 51.

[4] "MS" stands for "Mara Salvatrucha", an El Salvadoran and American gang. A.R. 122.

[5] In his removal interview, Mejia stated that he was not a gang member and that his friends, who were "gangbangers", put the tattoo on him. A.R. 307, 312.

[6] Mejia's wife is a native and citizen of the United States.

counsel pointed to Mejia's wife's testimony and the general country conditions regarding gangs in support of his argument. A.R. 130. Because Mejia did not include such a claim in his application or testimony, the IJ declined to consider a claim of harm based on gang membership. A.R. 55.

The IJ found Mejia ineligible for statutory withholding and withholding of removal under the CAT because an Interpol arrest warrant for aggravated murder provided a serious reason to believe Mejia had committed a serious non-political crime in El Salvador. See 8 U.S.C. § 1231(b)(3)(B)(iii) [INA § 241(b)(3)(B)(iii)] (statutory withholding of removal not available where "there are serious reasons to believe that the alien committed a serious nonpolitical crime outside the United States before the alien arrived in the United States"); 8 C.F.R. § 208.16(d) (similar provision regarding withholding of removal under the CAT). Furthermore, the IJ concluded that even if eligible, Mejia had not satisfied his burden of proof for withholding of removal.

The IJ recognized that Mejia might still be eligible for deferral of removal under the CAT, if he could demonstrate that it was more likely than not that he would be tortured "by or at the instigation of or with the consent or acquiescence of a public official or some other person acting in an official capacity." A.R. 49; 8 C.F.R. § 208.18(a)(1) (definition of torture); 8 C.F.R. § 208.17 (noting that deferral of removal is available for certain aliens ineligible for withholding of removal). However, the IJ found that, assuming Mejia was beaten, as he testified, the men who beat him were acting as individuals and not in any

4

official capacity. A.R. 53. The IJ found no evidence in the record that "the government of El Salvador or any public official in El Salvador has any intention whatsoever of torturing him because of his involvement in the murder of Mr. Romero." Id. The BIA affirmed without opinion on September 7, 2006.

When the Board summarily affirms, we review the IJ's decision. Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). As the IJ noted, 8 U.S.C. § 1231(b)(3)(B)(iii) provides that an alien is ineligible for withholding of removal if there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States. The record contains an Interpol notice showing that El Salvador had issued a warrant for Mejia's arrest for murder. A.R. 300-01. Mejia did not contest the authenticity of the notice. Neither his brief to the BIA nor his brief in this Court argues that the notice is not a serious reason for believing that he committed a serious nonpolitical crime.[7] Mejia's failure to exhaust his administrative remedies of this aspect of his case bars our review of this claim. 8 U.S.C. § 1252(d)(1) [INA § 242(d)(1)]; see also Bonhometre v. Gonzales, 414 F.3d 442, 448 (3d Cir. 2005).[8]

---

[7] Mejia's brief is dominated by an argument that the IJ improperly found that Mejia would experience "prosecution" rather than "persecution" if returned to El Salvador. First, the IJ's decision says nothing about "prosecution." Second, the argument that Mejia has or would experience persecution is irrelevant to the question of whether Mejia should be granted withholding of removal if, as the IJ found, Mejia is statutorily ineligible for such relief.

[8] Even if he had raised the issue before the Board, his failure to raise the issue in his brief in our Court also constitutes a waiver of the issue. Chen v. Ashcroft, 381 F.3d 221, 235 (3d Cir. 2004).

As Mejia has not contested the finding that makes him ineligible for statutory withholding of removal and withholding of removal under the CAT, the only remaining issue is whether the IJ erred in denying deferral of removal under the CAT. As noted above, the IJ denied deferral of removal because Mejia did not show that any harm he had experienced or might experience in El Salvador was or would be "at the hands of a public official or some other person acting in an official capacity." A.R. 52-53. Evidence of general corruption and violence in El Salvador is, itself, insufficient to warrant relief. See Auguste v. Ridge, 395 F.3d 123, 154-55 (3d Cir. 2005). As the Government points out, although his brief mentions the word "torture" several times,[9] Mejia "does not mount a direct challenge to any of the grounds on which the immigration judge relied in finding him ineligible for CAT protection." Respondent's Brief, at 26. Indeed, Mejia conceded before the IJ that the men who beat him were not acting in an official capacity.

---

[9] Mejia argues in part that he was targeted in the past, and will be tortured in the future, due to his perceived gang membership. He argues that others suspect him of being a gang member due to the large "18" tattooed on his back. Aside from his brief to the BIA, the record contains absolutely no support for his contention that he has an "18" on his back; in fact, the IJ examined his back during the hearing, and noted only a "faint outline of an M and a faint outline of another letter, which the Court was unable to discern as to whether it was an S or some other letter." A.R. 63. We also disagree with Mejia's statement that the "record . . . reflects that [the brothers of the deceased] arrested him based on his tattoos or perceived gang membership . . . ." Petitioner's Brief at 22. Further, to the extent his claim of perceived gang membership impacts his deferral claim, we hold that the IJ did not err in finding that Mejia waived such a claim by failing to include the claim in his written application for relief and by failing to testify regarding the claim.

6

For the foregoing reasons, we will deny the petition for review.[10]

---

[10] Mejia's brief contains an argument section captioned "Whether the Petitioner's removal during the pendency of the petitioner's Habeas claim was proper before the District Court was proper [sic] and whether the petitioner should be permitted to apply for adjustment of status or cancellation of removal pursuant to section 245 of the INA." Our jurisdiction is limited to the questions presented by the petition for review of a final order of removal. The question of whether Mejia should be allowed to apply for adjustment of status or cancellation of removal is not properly before us. 8 U.S.C. § 1252(b)(4).