**HUA YANG, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–2842.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit LAR 34.1(a) June 17, 2009.

Opinion filed: Oct. 26, 2009.

Gary J. Yerman, Esq., Yerman & Associates, New York, NY, for Petitioner.

Richard M. Evans, Esq., Glen T. Jaeger, Esq., Rebecca A. Niburg, Esq., Andrew J. Oliveira, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: McKEE, NYGAARD and ROTH, Circuit Judges.

OPINION

PER CURIAM.

Hua Yang, a native and citizen of the People's Republic of China, entered the United States without inspection in 2005. The Government later charged him with removability, which he conceded before an Immigration Judge ("IJ"). Through counsel, Yang applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), asserting that he feared returning to China where he faced religious persecution for organizing and participating in an underground Roman Catholic church in his hometown.

The IJ made an adverse credibility determination on the basis that Yang's testimony was in conflict with his documentary evidence, which the IJ described as "not authenticated." Because of this "lack of credibility" and "implausibility," the IJ denied Yang's asylum application. The IJ also noted, that "even in the alternative, [she] would have to find" that Yang had not shown past persecution. She subsequently concluded that he had not shown that he would be subject to future persecution. On the same reasoning, the IJ denied the withholding claim. She also held that Yang had set forth no facts or circumstances to show that he would be tortured on return to China and denied the CAT claim.

Yang appealed to the Board of Immigration Appeals ("BIA"). The BIA dismissed Yang's appeal. The BIA stated that Yang did not challenge the IJ's factual findings

and held that the IJ's legal conclusions were correct for the reasons given by the IJ. In particular, the BIA held that Yang did not establish a fear of persecution "given discrepancies concerning his relationship with a government sanctioned church." The BIA also especially noted that Yang did not "submit documentation to corroborate his claim that fellow underground church members are being persecuted by the Chinese government."

Yang petitions for review of the BIA's decision.[1] We have jurisdiction over Yang's petition under 8 U.S.C. § 1252(a). In reviewing the BIA's and IJ's decisions, see *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir.2004), we consider questions of law *de novo*.[2] *See Gerbier v. Holmes*, 280 F.3d 297, 302 n. 2 (3d Cir.2002). We review factual findings, like an adverse credibility determination, for substantial evidence. *See Butt v. Gonzales*, 429 F.3d 430, 433 (3d Cir.2005). An adverse credibility finding must be afforded substantial deference, so long as the finding is supported by sufficient, cogent reasons. *See id.* at 434. We evaluate whether the credibility determination was "appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence of country conditions." *Chen*, 376 F.3d at 223.

We note that before the enactment of the REAL ID Act of 2005, an adverse credibility determination could be based on inconsistencies only if the inconsistencies went to the heart of the claim. *See Chuk-*

1. Yang previously sought a stay of removal, which we granted.

2. As the Government reminds us, we do not consider issues that were not exhausted in agency proceedings. *See Bonhometre v. Gonzales*, 414 F.3d 442, 447 (3d Cir.2005). However, we do not agree with the Government that Yang did not exhaust his claim that he

showed past persecution or that he has a well-founded fear of future persecution. *See* R. 19–23. (We note additionally that although Yang clearly exhausted the issues in his brief to the BIA, he may have had a question about whether he should have given the IJ's conditional phrasing of the alternative denial of relief.)

*wu v. Attorney Gen. of the United States*, 484 F.3d 185, 189 (3d Cir.2007). However, a new REAL ID Act standard, which provides that "credibility determinations may be made 'without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim,'" applies to Yang's case because he filed his application for relief from removal after May 11, 2005. *See id.* (quoting the REAL ID Act); *see also Kaita v. Attorney Gen. of the United States*, 522 F.3d 288, 296 (3d Cir.2008). Although we have not yet spoken on what the change in the law means, we conclude that the credibility finding in this case is suspect under the pre-REAL ID Act standard and any stricter standard of review that follows from the REAL ID Act. *See, e.g., Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir.2008).

First, we are perplexed by the BIA's statement that Yang did not challenge the IJ's factual findings. That statement is simply not correct because, among other things, Yang's appeal brief to the BIA plainly challenges the IJ's core adverse credibility findings. *See* R. 16–17.

▮▮▮ Second, in dismissing the appeal, the BIA specifically relied on the IJ's reasoning that Yang's testimony about his underground church activities was contradicted by the letter that he submitted from the Bishop of the Catholic Church in the Mawei district. However, the IJ's conclusion that the evidence in the letter "is completely and totally different from the testimony" is clearly erroneous. At the immigration hearing, Yang was asked whether he attended the government-approved Catholic Church in the Mawei district. He stated that he was baptized there, but that he regularly attended the underground churches in his hometown. The IJ disbelieved that testimony, pointing to the Bishop's letter which, the IJ insisted, indicated that Yang "frequently attended mass there [in the Catholic Church in the Mawei district]." However, the letter indicates only that Yang was a good member of the Catholic church in his hometown and not that he was a good member of the Bishop's church in the Mawei district, which Yang testified was far away from his village. Throughout the hearing, Yang consistently testified that he regularly attended underground masses that he organized in his hometown.

In regard to the letter, the IJ also questioned Yang about why the Bishop indicated "that the government of the People's Republic of China does not provide religious freedom to individuals in China." The IJ found Yang's response inadequate. First, the IJ mischaracterized the Bishop's statement a bit. In context, it was that "[a]lthough China is not a free country for religious belief, [Yang] was enthusiastic in the Gongjiao activities." The statement was not inconsistent with Yang's account nor is it in conflict with the 2006 International Religious Freedom Report that the IJ considered. As Yang conceded, the Bishop may have been taking a chance in including such a statement in a letter. And the IJ, in determining whether a letter from the Bishop would include a comment on religious freedom in China, could "draw inferences based on common sense and logic as well as on personal experience and background knowledge gained from exposure to certain situations," *Dia v. Ashcroft*, 353 F.3d 228, 250 (3d Cir.2003). However, the IJ did not do this so much as take Yang to task for not being able to articulate the Bishop's reason for including the comment about religious freedom.

The IJ also faulted Yang's testimony for its lack of details. It has been said that "details matter." *Mitondo v. Mukasey*, 523 F.3d 784, 789 (7th Cir.2008). However, at the hearing, Yang plainly and consistently described his activities, including the following: that he and his family orga-

nized masses in his house; that he distributed literature in the village; and that, as a result of these activities in the village, the underground church grew. Moreover, he also described how he escaped from the village office where he was detained, and how, with the assistance of his uncle, he escaped to a relative's house and then to the United States. While he did not provide much information about where his parents have been living in hiding, the lack of details alone does not support the adverse credibility determination in this case. Had the IJ not understood the Bishop's letter as contradicting the testimony, it is unclear if the IJ would have made the adverse credibility finding.

Furthermore, it was "in light of the [perceived] contradictory testimony" that the IJ gave little weight to a summons for him to appear at the police station and a subpoena for him to appear in court. As the IJ acknowledged, the summons and the subpoena were sent to a forensic lab and the Forensic Document Examiner confirmed that the forms were authentic; however, the Examiner could make no further conclusions regarding the document's authenticity without specimens of the handwriting and authenticating seals of the author.

The IJ also noted that Yang did not corroborate the portion of his claim involving hiding with relatives and his testimony about other underground church members being questioned. However, it is not clear if the IJ would have required corroboration in the absence of her mistake about the contradictions in the testimony. *Compare Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir.2003) (holding that an alien's credible testimony may satisfy the burden of proof for a claim for asylum or other relief from removal) *with Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir.2001) (allowing the agency to require even "otherwise-credible applicants to supply corroborating evi-

dence in order to meet their burden of proof").

■ Finally, we address the IJ's summary alternative conclusion (or conditional and alternative conclusion) that Yang had not carried his burden of showing that he suffered past persecution or that he would face future persecution. In that evaluation, the IJ acknowledged, but simply did not address, Yang's testimony that his religious activities caused the village cadre and government officials to come to his house, interrogate him about his religious activities, physically assault him, detain him, and, later, issue a summons and criminal complaint against him. Also in relation to her decision, the IJ at one point touched on Yang's apparent ability to live outside his village unmolested with a relative. However, the IJ did not address Yang's testimony that he was not organizing underground church meetings while in hiding. Furthermore, the analysis may change if the IJ concludes, on a renewed consideration of the evidence, that Yang showed past persecution through credible testimony (or credible, corroborated testimony). In that case, the burden would be on the Government, not Yang, to show that Yang could relocate to avoid future persecution and that it would be reasonable to expect Yang to do so. *See* 8 C.F.R. § 1208.13(b)(1)(ii).

■ Despite our concerns about the analysis of Yang's asylum and withholding claims, we agree with the agency that Yang has not shown that it would be more likely than not that he would be tortured if removed to China so as to entitle him to relief under the CAT. *See Tarrawally v. Ashcroft*, 338 F.3d 180, 186 (3d Cir.2003).

For these reasons, we will deny in part the petition for review as it relates to the CAT claim and grant the petition in part as it relates to the analysis of the asylum and withholding claims. Accordingly, we

will affirm in part and vacate in part the BIA's decision and remand the matter to the agency for further proceedings.