OPINION
PER CURIAM.
Petitioner, Yanick Voltaire Montel, seeks review of the Board of Immigration Appeals’ (“BIA”) final order of removal. For the following reasons, we will deny her petition.
I.
Montel is a native and citizen of Haiti. Montel conceded that she was removable for entering the United States without inspection or parole, but applied for asylum and related relief on the ground that she would face persecution by the controlling Lavalas party if forced to return to Haiti.
Montel testified that her political problems in Haiti began on April 9, 2005, when six armed men entered her beauty salon and forced her to shut it down. Montel explained that the men were part of an anti-Lavalas rebel group who were hiding from the police. The men vandalized the salon and slapped her in the face. Montel claimed that after the incident, she began receiving threatening phone calls from La-valas supporters accusing her of providing sanctuary to the rebels. Fearing for her safety, Montel closed her salon down for several months. She testified that she reported the incident to the police on April 17, 2005.
According to Montel, approximately two months after the incident at the salon, on June 12, 2005, a group of Lavalas supporters went to her house looking for her. Montel was not at home at the time, but her uncle, Mario, was. The men assaulted Mario.
Montel testified that she reopened her salon on August 20, 2005. That morning, five men pulled up to the salon in a white van and kidnapped her. Montel testified that two of the men in the van raped her. She was in her sixth month of pregnancy at the time. Eventually, the van began to experience mechanical problems, and the driver pulled over to the side of the road. Montel stated that she was then told to get out of the van, which she did. She then walked away and was able to escape any further harm. Montel did not report this incident to police because she feared that the attack would be made public, subjecting her to humiliation and shame. She stated that her mother advised her to go to the doctor, but she was too upset to discuss the sexual assault.
After this last incident, Montel fled to Baro to hide. She then went to Port-de-Paix, where a friend helped her find passage to the United States. Montel testified that, meanwhile, the men who had beaten her uncle returned to her home looking for her a second time. When her father told them that she had left the country, the men assaulted him as well as her younger sister.
Montel told the court that she sought asylum in the United States because she would be killed by Lavalas if she were forced to return to Haiti; according to Montel, the Lavalas party, which is still in power, believes that she voluntarily gave sanctuary to anti-Lavalas rebels during the April 9, 2009 incident, and has been looking for her ever since.
On cross-examination, the government inquired into several inconsistencies in the record. First, the government noted that Montel’s asylum application made no mention of the August 20, 2005 kidnapping and sexual assault, and asked Montel to provide an explanation for the discrepancy. She stated that she did not include the incident in her application because she was not comfortable talking about the sexual *383 assault. The government also asked why her mother, who had provided a statement in support of Montel’s story, did not mention the kidnapping and sexual assault— particularly given Montel’s testimony that she told her mother about the assault. Montel surmised that her mother must have omitted it because she knew that she, Montel, did not like to discuss it.
Next, the government asked Montel about three different police reports that she had submitted to corroborate the April 9, 2005 incident at her salon. Initially, Montel had submitted two reports: one dated February 15, 2007, which stated that her salon had been destroyed on an unspecified date in 2005, that she had been assaulted, and that her uncle had been present during the incident; and one dated June 13, 2005, which stated that, at 2:00 p.m. on June 12, 2005, her salon had been destroyed and she had been hit and threatened.[1] Montel later submitted a third police report, which was dated April 9, 2005, and stated that, at 11:00 a.m. that morning, her salon was destroyed and she was hit and threatened. When asked to explain the inconsistencies among the reports, she stated that a friend in Haiti had retrieved the first two reports on her behalf, and must have given the police the wrong information. According to Montel, the third report was the authentic report. As the government pointed out, however, even the third report — which was dated April 9, 2005 — was inconsistent with her testimony insofar as she stated that she had waited until April 17, 2005 to go to the police.
After the parties had finished questioning Montel, the Immigration Judge (“IJ”) asked Montel why, in her initial statement about the April 9, 2005 incident at the salon, she failed to mention that six men had been involved, that the men had damaged property in the shop, and that they had assaulted her. Montel stated that she had in fact provided that information to her attorney, and she did not know why it was not included in her written statement.
After the hearing, the IJ found that Montel was not credible because she had provided conflicting statements and material omissions regarding her mistreatment in Haiti. Based on this adverse credibility determination, the IJ denied Montel’s applications for asylum and withholding of removal. He also denied her application for relief under the CAT. Upon review, the BIA agreed with the IJ’s adverse credibility determination and dismissed the appeal. Montel now petitions for review of the BIA’s order.
II.
We have jurisdiction to review the BIA’s final order of removal pursuant to 8 U.S.C. § 1252(a)(1). See Abdulai v. Ashcroft, 239 F.3d 542, 548 (3d Cir.2001). When, as in this case, the BIA substantially relies on the findings of the IJ, we review the decisions of both the BIA and the IJ. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir.2004). We review these findings, including any credibility determinations, under a substantial evidence standard. See Cao v. Att’y Gen., 407 F.3d 146, 152 (3d Cir.2005). An adverse credibility finding must be upheld unless “any reasonable adjudicator would be compelled to conclude to the contrary.” Berishaj v. Ashcroft, 378 F.3d 314, 322 (3d Cir.2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). Because Montel filed her application for relief after the enactment of the REAL ID Act of 2005, the BIA’s credibility determinations are governed by the Act. See Chukwu v. Att’y Gen., 484 F.3d 185, 189 (3d Cir.2007). Un *384 der the REAL ID Act, an IJ may base his credibility determination on observations of the applicant’s demeanor, the plausibility of the applicant’s story, and on the consistency of the applicant’s statements. See INA § 208(b)(l)(B)(iii); Gabuniya v. Att’y Gen., 463 F.3d 316, 322 n. 7 (3d Cir.2006).
Montel first argues that the agency’s adverse credibility determination is not supported by substantial evidence. We disagree. The record reveals several inconsistencies in Montel’s story that she could not explain. For example, although she stated at the hearing that, on August 20, 2005, a group of Lavalas supporters kidnapped and raped her, she made no mention whatsoever of this incident in her application for asylum. Nor did her mother, who knew about the abduction, mention it in the statement she made to corroborate Montel’s story. Similarly, although Montel testified at the hearing that the men who entered her salon on April 9, 2005 slapped her in the face and destroyed her property, her application failed to include these material facts. In addition, while Montel testified that she reported the April 9, 2005 incident to the police on April 17, 2005, the report itself is dated April 9, 2005. While Montel argues on appeal that she provided convincing explanations for these inconsistencies and omissions, we cannot conclude that “any reasonable adjudicator” would have been convinced. See 8 U.S.C. § 1252(b)(4)(B). Therefore, we will defer to the agency’s findings. See Butt v. Gonzales, 429 F.3d 430, 434 (3d Cir.2005).
Montel also makes three due process arguments on appeal. First, she claims that the IJ violated her due process rights by denying her request to withdraw from the record the two police reports that were inconsistent with the third. Montel does not, however, cite any authority for the proposition that she was entitled to remove previously-submitted documents from the record on the ground that they contradict others, and we see no other error in the IJ’s ruling. Next, Montel argues that the IJ, in determining that Mon-tel failed to establish a well-founded fear of persecution, impermissibly relied on certain country reports that had not been presented to her for examination. However, as the BIA noted, Montel did not object to the admission of these reports at the hearing or ask to review them. Therefore, she has waived her ability to challenge them on appeal. See In re R-S-H, 23 I. & N. Dec. 629, 638 (BIA 2003). Finally, Montel argues that the IJ violated her due process rights by relying on a lack of evidence as a factor in determining her credibility. Montel, however, failed to present this argument to the BIA. Therefore, it has been waived. See Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir.2005).
Given that substantial evidence supports the BIA’s adverse credibility determination, and that Montel has failed to demonstrate that her due process rights were violated at the removal hearing, we agree with the BIA that she failed to establish eligibility for asylum on the basis of past persecution, and that nothing in the record demonstrates that she has a well-founded fear of future persecution. See 8 U.S.C. § 1101(a)(42)(A); Ghebrehiwot v. Att’y Gen., 467 F.3d 344, 351 (3d Cir.2006). Furthermore, because Montel’s claims for withholding of removal and relief under the CAT are based on the same evidence as her asylum claim, we conclude that substantial evidence supports the denial of these claims as well.
Accordingly, we will deny the petition for review.

. At the beginning of the hearing, Montel's counsel sought to withdraw the first two police reports, but the IJ denied her request.