NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4025
_____

CARLOS ANDRES IBANEZ BONILLA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
DEPARTMENT OF HOMELAND SECURITY,

Respondents

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A98-480-260)
Immigration Judge:  Honorable Annie S. Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 4, 2011
Before:  BARRY, HARDIMAN and COWEN, Circuit Judges

(Opinion filed  May 10, 2011)
_____

OPINION
_____

PER CURIAM

Carlos Andres Ibanez Bonilla, a citizen of Colombia, entered the United States in

December 2003 as a visitor.  He affirmatively sought asylum, withholding, and protection

under the Convention Against Torture.  The Government charged him as removable for

overstaying his visa, which he conceded. The Immigration Judge ("IJ") denied Ibanez

Bonilla's applications for relief. She made an adverse credibility finding on the basis that

the police report offered by Ibanez Bonilla conflicted with his testimony, and ruled in the

alternative that he was not entitled to relief from removal even if he had testified credibly.

Ibanez Bonilla appealed to the Board of Immigration Appeals ("BIA"), primarily

arguing that he met the standard for asylum based on his experiences in Colombia (he

also mentioned that he was entitled to withholding and CAT relief). In addition, he stated

that the source of the denial of his claim was what the IJ perceived as inconsistencies

between a police report and details in his testimony. He attempted to excuse any memory

lapses on his relative youth at the time of the incidents (he was 20 years old) and the

effects of fear on memory. The BIA dismissed the appeal, holding that even if it assumed

that Ibanez Bonilla's testimony was true, the IJ did not err in determining that Ibanez

Bonilla failed to meet his burdens of proof for asylum and withholding and that he was

ineligible for CAT relief.

Ibanez Bonilla presents a petition for review. We have jurisdiction pursuant to 8

U.S.C. § 1252(a). We consider questions of law de novo. See Gerbier v. Holmes, 280

F.3d 297, 302 n.2 (3d Cir. 2002). We review factual findings, like an adverse credibility

determination, for substantial evidence. See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir.

2005). However, we will not consider issues not exhausted before the BIA. See

Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005).

Ibanez Bonilla presents three issues in his petition. He argues that the IJ used the

wrong standard in determining whether he was entitled to asylum and contends that he is entitled to asylum under the proper standard. He also maintains that the IJ erred in ruling that his testimony was not credible because of inconsistencies between his testimony and the police report he submitted. Lastly, Ibanez Bonilla takes issue with the form of the BIA's opinion, stating that it is not a "real opinion" because it "merely reflects the judgment of the [IJ] and does not provide any analysis." Pet. Brief 13. He asks us to focus our review on the IJ's opinion.

In response, the Government asks us to dismiss Ibanez Bonilla's petition for lack of jurisdiction on the basis that he did not raise the arguments in his appeal before the BIA. Alternatively, the Government contends that substantial evidence supports the conclusion that Ibanez Bonilla did not meet his burdens of proof for asylum, withholding, or CAT relief.

We reject the Government's invitation to dismiss the petition in its entirety. Taking Ibanez Bonilla's claims out of order, we note that the third claim, which is about the form of the BIA's final ruling, could not have been presented to the BIA in his brief on appeal. Because exhaustion was not available to him on that claim, we may consider it. See Bonhometre, 414 F.3d at 447-48. We deny the claim as without merit. The form of the BIA's decision is unexceptional, by which we mean that it reads as a "real opinion" with sufficient analysis show that it reviewed the record and that it considered Ibanez Bonilla's arguments before the IJ and on appeal. See Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) (noting that the BIA "'is not required to write an exegesis

3

on every contention'") (citation omitted). Ibanez Bonilla need not be concerned that we will ignore the IJ's decision to the extent it is relevant. Where the BIA relies in part on the IJ's reasoning, we review both decisions. See Chen v. Ashcroft, 376 F. 3d 215, 222 (3d Cir. 2004).

In relation to the IJ's ruling, Ibanez Bonilla assigns error to a ruling that his testimony was not credible because of inconsistencies between his testimony and the police report he submitted. It is not entirely clear whether he challenged the IJ's adverse credibility finding in the BIA, although he did address the finding that there were inconsistencies between a police report and details in his testimony in his brief and offered excuses for any discrepancies. Even if he raised a challenge to the credibility finding, however, his challenge is irrelevant here. In reviewing an agency's determination, we "approve or reject the agency's action purely on the basis of the reasons offered by . . . the agency itself." See Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir. 2004) (citing SEC v. Chenery Corp., 318 U.S. 80 (1943)). The BIA did not reject his claim based on the credibility finding; it assumed that his testimony was true and based its ruling on his failure to meet the burdens of proof for relief from removal. R. 2 ("Even assuming the veracity of the respondent's testimony, we find no error in the Immigration Judge's determination that the respondent failed to meet the burdens of proof . . . .")

Lastly we consider whether Ibanez Bonilla was entitled to asylum under the proper

4

standard, an argument that he presented to the BIA.[1]  Upon review, we conclude that the

BIA did not err when it ruled that the IJ committed no error in concluding that Ibanez

Bonilla had not shown past persecution or a well-founded fear of future persecution.

Putting aside any inconsistency between his testimony and the police report he

provided, and assuming that his claim is truth, in March 2003, two members of the

Revolutionary Armed Forces of Colombia ("FARC"), approached him.  R. 592.

Recognizing Ibanez Bonilla from his involvement in "recreational issues" and marches

against kidnapping, terrorism, and drug addiction, the FARC members sought his help in

recruiting new members.  Id.  They told him that he would be rewarded well for his

assistance; they also reminded him of what happened to his friend, a police officer who

had been killed because he did not follow FARC orders.  Id.  Initially, Ibanez Bonilla told

them he would help.  Id. at 593.  A couple of weeks later, they called to see if he had

made progress and offered a sum of money for his help.  Id.  In June, they called again,

and he put them off by saying that he was not having success in recruiting (he had not in

fact tried to recruit anyone).  Id.  In August, they called again; when he told them to

leave him alone because he was not going to do anything, they warned him that he should

be careful because they were watching.  Id.  A little more than two weeks after that, he

---

[1]In the agency, he also contended that he met the standards for withholding and CAT relief, claims that we do not consider because he waived them by not renewing them in the brief he submitted to us.  See Lie v. Ashcroft, 396 F.3d 530, 532 n.1 (3d Cir. 2005).

was driving near his city between 10:30 and 11:00 at night when a car with dark polarized glass tried to block him and make him crash. Id. He accelerated and passed the car, but its occupants shot at him four times, with one bullet hitting the rear of his car. Id. Ibanez Bonilla could not see who was in the car and cannot say with certainty why they targeted him. Id. at 180 & 192. He conceded on cross-examination that it could have been a robbery attempt. Id. at 192. Feeling that his life was in danger after that incident, he went to stay with his aunt two hours away from his hometown. Id. at 593. While he was at his aunt's house, FARC members called his house and threatened his parents and siblings, telling them to reveal where he was living or "pay the consequences." Id. At the beginning of the December in which he left Colombia, FARC sent a pamphlet to his house in which they described him as a "military target" and "sentenced [his] life." Id.

The record does not compel a conclusion contrary to the agency's that Ibanez Bonilla was not persecuted on the basis of a political opinion imputed or attributed to him. In denying his claim, the IJ cited Matter of R-O-, 20 I. & N. Dec. 455 (BIA 1992). In Matter of R-O-, the BIA concluded that a man, who faced threats after he withdrew from a guerrilla group to avoid participating in more "vigorous activities," was not entitled to asylum on the basis of political opinion. 20 I. & N. Dec. at 456. Ibanez Bonilla argues that the case is distinguishable. It is distinguishable in the sense that Ibanez Bonilla was not a guerrilla who was extricating himself from a cause because he did not want to engage in more complex guerrilla tactics and because he feared getting into trouble by the government, like the person in Matter of R-O-. See 20 I. & N. Dec. at

6

458-459 (otherwise describing the alien as someone who did not want to continue his participation in guerrilla activities).  However, the principle that the BIA cited in Matter of R-O- applies.  The BIA was applying the holding of INS v. Elias-Zacarias, 502 U.S. 478 (1992), *superseded by statute on other grounds*.  In Elias-Zacarias, the Supreme Court held that forced recruitment by guerrillas merely in order to fill their ranks, carry on their activities against the government, and pursue their political goals, is not persecution on account of political opinion.  See 502 U.S. at 482.  That is, the persecution must be based on a political opinion held by, or imputed to, the target of the persecutory acts.

The record does not compel the conclusion that FARC persecuted Ibanez Bonilla because of his political opinion.  He brings our attention to his involvement in peace marches and protests.  That supports his claim that he may have opposed FARC or activities associated with FARC.  However, it does not show that FARC members asked him to recruit others or otherwise help them because of those beliefs.  In his application, Ibanez Bonilla stated that the FARC members who sought his help said that his previous activities did not matter and that they thought he would be useful in helping them recruit youth. R. 592.  He also testified that they approached him to recruit because he was a "leader of the young people." R. 178.  Ibanez Bonilla points to the FARC members' reminder of what happened to his friend, describing it as a veiled threat  that shows that they were forcing him to help in recruiting because of his political opinion.  However, the IJ noted that Ibanez Bonilla had not given FARC members reason to think that he would

7

not help them at that time; at the conclusion of the conversation, he agreed to help them. There were more threats later, when he told them to leave him alone. Even if they could be seen as a response to an actual or imputed political opinion (that is, if his telling them to leave him alone constituted opposition to FARC), the threats alone, even if there were death threats, did not constitute persecution; they were not "highly imminent or concrete or . . . result in any physical violence or harm to [Ibanez Bonilla]." See Chavarria v. Gonzalez, 446 F.3d 508, 518 (3d Cir. 2006). Although Ibanez Bonilla suffered a frightening incident in his car, the IJ's ruling that she could not conclude that the incident was an act of persecution is supported by the record. As we noted above, as Ibanez Bonilla himself concedes, the car's occupants and their motives remain unknown.

In short, Ibanez Bonilla cannot show that the record compels the conclusion that he was entitled to asylum. Accordingly, and for the other reasons stated above, we will deny his petition for review.