**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3423
_____

OLUSEGUN BEXLEY AYODELE,

               Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

               Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A020-067-957)
Immigration Judge:  Honorable Jesus Clemente; previously Honorable Andrew
Arthur
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 12, 2012

Before: JORDAN, HARDIMAN and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  March 30, 2012)
_____

OPINION
_____

PER CURIAM

Olusegun Bexley Ayodele, a citizen of Nigeria, entered the United States in 1972. His status was adjusted to that of a lawful permanent resident in 1975. In 1993, Ayodele was convicted in federal court of importing heroin in violation of 21 U.S.C. § 952(a) and was sentenced to 37 months of imprisonment and five years of supervised release. In 1995, he was placed in exclusion proceedings, but an Immigration Judge ("IJ") granted him a waiver of exclusion (under the now-repealed Section 212(c) of the Immigration and Nationality Act) in early 1996.

In 1998, Ayodele was convicted in New Jersey Superior Court for aggravated assault in the third degree, resisting arrest, possession of heroin, and manufacturing, distributing, or dispensing heroin. Also in 1998, Ayodele pleaded guilty to possessing heroin with the intent to distribute it, for which he was sentenced to one year and one day in prison. In 2009, in light of the 1998 guilty plea for possession, he was adjudicated guilty of violating the terms of his supervised release on his earlier federal conviction.

The Government charged Ayodele as removable in April 2010 for having been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, for having been convicted of an offense relating to illicit trafficking in a controlled substance, and for having been convicted of a violation of or a conspiracy or attempt to violate a law relating to a controlled

2

substance. Ayodele conceded all the allegations in the notice to appear except the allegation that he had been convicted of manufacturing, distributing, or dispensing a dangerous controlled substance. The first IJ who reviewed the matter sustained the allegation based on the criminal conviction evidence the Government submitted; the second IJ agreed based on the same evidence and Ayodele's testimony at his hearing. The IJ ruled that Ayodele was removable as charged.

Ayodele applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Concluding that Ayodele's federal conviction for importing heroin was illicit trafficking of a controlled substance and an aggravated felony, the IJ held that he was not eligible for asylum. The IJ applied the same analysis to Ayodele's conviction for manufacturing with the intent to deliver heroin. The IJ also held that Ayodele was not eligible for statutory withholding of removal because he had been convicted of a particularly serious crime. The IJ concluded that even though Ayodele had been sentenced to fewer than 5 years in prison, the fact that he pleaded guilty voluntarily, and that he thought he was smuggling gold, rather than heroin, into the country did not overcome the presumption that his illicit trafficking offense was a particularly serious crime. Having determined that Ayodele had committed a particularly serious crime, the IJ held that he was subject to mandatory denial of withholding of

3

removal under the CAT. The IJ additionally ruled that Ayodele did not meet his burden to show that he was entitled to deferral of removal under the CAT.

Ayodele appealed to the Board of Immigration Appeals ("BIA"). The BIA stated that it was undisputed that his criminal convictions rendered him removable as charged and ineligible for asylum, withholding of removal, and CAT withholding. The BIA rejected Ayodele's claim that the IJ erred in denying the application for deferral of removal. The BIA also denied various asserted due process claims and noted the irrelevancy of Ayodele's contentions relating to collateral review of his criminal convictions that he apparently was seeking.

Ayodele presents a petition for review. As a preliminary matter, we must consider the scope of our review. Our jurisdiction is circumscribed because Ayodele is removable for having been convicted of an aggravated felony. See 8 U.S.C. § 1252(a)(2)(C). However, we retain jurisdiction over constitutional claims and questions of law. See Pierre v. Att'y Gen., 528 F.3d 180, 184 (3d Cir. 2008) (en banc) (citing 8 U.S.C. § 1252(a)(2)(C)-(D)); see also Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 63 (3d Cir. 2007) (citing Kamara v. Att'y Gen., 420 F.3d 202, 210-11 (3d Cir. 2005), for the proposition that the "jurisdictional grant regarding appeals by aggravated felons extends not just to legal determinations but also to application of law to facts"). We do not consider, however, issues that were not

4

exhausted in the agency proceedings.[1]  See Bonhometre v. Gonzales, 414 F.3d

442, 447 (3d Cir. 2005) (footnotes omitted); 8 U.S.C. § 1252(d)(1).

Because our jurisdiction is limited, we cannot consider Ayodele's challenge

to the denial of CAT relief to the extent Ayodele takes issue with factual

determinations by the agency.  However, Ayodele also argues that the agency used

the wrong standard in assessing his CAT claim.  In order to succeed on a CAT

claim a petitioner must show "'that it is more likely than not that he or she would

be tortured if removed to the proposed country of removal.'"  Sevoian v. Ashcroft,

290 F.3d 166, 174-75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)).  Further, a

petitioner must show that the torturous acts would be inflicted "by or at the

instigation of or with the consent or acquiescence of a public official or other

person acting in an official capacity."  8 C.F.R. § 1208.18(a)(1).  In ruling on the

CAT claim, the IJ stated this standard.  IJ Decision at 11.  Similarly, the BIA's

ruling ostensibly is an application of this standard.  BIA Decision at 2 (stating that

Ayodele did not show that it was more likely than not that he would be tortured

and alternatively concluding that even if he had, he had not shown the consent or

acquiescence of a public official to any torture).

---

[1] Accordingly, we do not consider Ayodele's challenge to his removability or the other
issues he did not raise before the BIA.

To meet the CAT standard, an alien must offer sufficient objective evidence. See Sevoian, 290 F.3d at 175. Essentially, the agency ruled that Ayodele's evidence was insufficient to meet the standard. The IJ noted that Ayodele failed to show that the two persons he named as a threat were public officials in Nigeria or would act to harm him, with or without the acquiescence of public officials. The IJ stated that Ayodele had not even shown that the two persons he feared were in Nigeria, stating that Ayodele had testified only that he believed they were in Nigeria and admitted that he had not seen them since 1996, 1997, or 1998. Although he claimed they had family members in the Nigerian government around that time period, he conceded that he did not know if they remained in the government and did not show that they would consent or acquiesce to acts of torture even if they were public officials. The agency also considered that any corruption in the Nigerian government was neither so widespread as to be presumed to occur in the majority of cases nor present in the form of acquiescence to torture. These determinations relating to what Ayodele could face in Nigeria are factual findings, see Kaplun v. Att'y Gen., 602 F.3d 260, 271 (3d Cir. 2010), and accordingly cannot be reconsidered in this case, see supra. Taking the facts as found by the agency, there is no error in the application of the CAT standard. On

6

those facts, it does not seem more likely than not that Ayodele will be tortured in Nigeria.

Furthermore, to the extent that Ayodele's challenge to the denial of CAT relief included, and continues to include, a due process claim based on the state-created danger exception to the general rule that the Due Process Clause imposes no obligation on the state to protect an individual from harm inflicted by private parties, see, e.g., Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996), the claim is without merit. We have "stated unequivocally that 'the state-created danger exception has no place in our immigration jurisprudence.'" Rranci v. Att'y Gen., 540 F.3d 165, 171 (3d Cir. 2008); see also Kamara, 420 F.3d at 217.

Ayodele also contends that the IJ violated various constitutional rights (and abused his discretion) in denying him a continuance. Considering the matter, see Hoxha v. Holder, 559 F.3d 157, 163 n.5 (3d Cir. 2009), we conclude that the IJ did not err. Ayodele sought a continuance because he wanted to seek documents related to his conviction. R. 399. (He contended that some documents related to his original conviction that were used in charging him with a violation of his terms of supervised release were inaccurate and the Government was also presenting "some indictment and some information" to the IJ that were not true. R. 399.) However, Ayodele admitted the underlying conviction. R. 399 & 400. Although

7

Ayodele asserted that he was trying to have it overturned, R. 400, it was final for immigration purposes. See Paredes v. Att'y Gen., 528 F.3d 196, 198-99 (3d Cir. 2008) (holding that the pendency of collateral attacks does not negate the finality of convictions for immigration removal purposes).[2]

Related to the denial of the continuance, Ayodele also complains about the IJ's "sarcastic remarks [and] hostility." IJs must remain neutral and impartial in conducting immigration hearings and "'assiduously refrain from becoming advocates for either party.'" Abdulrahman v. Ashcroft, 330 F.3d 587, 596 (3d Cir. 2003) (citation omitted); see also Wang v. Att'y Gen., 423 F.3d 260, 268 (3d Cir. 2005). Contrary to Ayodele's assertion, the IJ met those obligations.

For these reasons, we deny the petition for review.

---

[2] For this reason, Ayodele's various challenges to his underlying convictions that he raises in his brief do not change the result.