NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2291
_____

PENG LIN,
                    Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                    Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-666-153)
Immigration Judge:  Honorable Frederic Leeds
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 6, 2014

Before:  HARDIMAN, NYGAARD and ROTH, Circuit Judges

(Filed: February 24, 2014)
_____

OPINION
_____

PER CURIAM

        Peng Lin is a native and citizen of the People's Republic of China who arrived in

the United States in 2006.  The Government charged him as removable under INA

§ 212(a)(6)(A)(i) for being present without having been admitted or paroled.  Lin

conceded the charge but sought asylum, withholding, and protection under the Convention Against Torture ("CAT"), claiming that he had been persecuted as a homosexual in China.

After a hearing, an Immigration Judge ("IJ") denied his applications for relief. Lin took an appeal to the Board of Immigration Appeals ("BIA"), which remanded the case on the basis that the IJ's decision did not include clear findings regarding credibility or past persecution. R. 343. In 2009, a different IJ held a hearing and denied Lin's applications for relief. In doing so, the IJ made an adverse credibility finding, noted a corroboration problem, rejected a claim of a pattern and practice of discrimination, and separately ruled that there was no evidence to support a CAT claim. Lin again appealed to the BIA, which adopted and affirmed the IJ's decision.

Lin, through appointed counsel, presents a petition for review. He argues that the adverse credibility finding and the ruling against him cannot stand because of the IJ's conduct[1] and the evidence in the case. He also argues that the agency erred in concluding that he did not show a pattern and practice of persecution of homosexuals in China. The

---

[1] As Lin presents this argument in his opening brief, it could be interpreted to include an independent due process claim that the IJ was biased, at least insomuch as Lin contends that the IJ deprived him of an opportunity to present his case. See, e.g., Appellant's Brief at 17-20. However, in addition to making an effort in the opening brief to tie the claim to the credibility determination, Lin, in his reply brief, states that an interpretation of his bias claim as an independent claim is a misinterpretation. See Appellant's Reply Brief at 1. We cannot consider an independent claim of bias in any event as it was not raised before the agency. See Bonhometre v. Gonzales, 414 F.3d 442,

Government counters that substantial evidence supports the adverse credibility finding and denial of relief and that Lin failed to establish his pattern-and-practice claim.

We have jurisdiction over Lin's petition pursuant to 8 U.S.C. § 1252(a). We consider questions of law de novo. See Gerbier v. Holmes, 280 F.3d 297, 302 n.2 (3d Cir. 2002). We review factual findings, such as an adverse credibility determination, for substantial evidence. See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005). We evaluate whether a credibility determination was "appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence of country conditions." Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004). We afford an adverse credibility finding substantial deference, so long as the finding is supported by sufficient, cogent reasons. See Butt, 429 F.3d at 434. After reviewing the matter, we cannot say that the record compels a conclusion different from the one reached by the agency in regards to the credibility determination.

First, we reject Lin's argument that his is a case in which "[t]he conduct of the IJ by itself would require a rejection of his credibility finding." Fiadjoe v. Att'y Gen. of the U.S., 411 F.3d 135, 155 (3d Cir. 2005). In considering the record in this case, we have read the transcript of the entire hearing, and we discern no evidence of IJ bias or prejudice. Neither the IJ's demeanor nor his questions in service of his duty to develop

447 (3d Cir. 2005).

3

the testimony, see Toure v. Att'y Gen. of the U.S., 443 F.3d 310, 325 (3d Cir. 2006), suggest any misconduct.

Second, as the IJ and BIA noted, there were omissions, or inconsistencies between Lin's testimony and his written evidence, relating to each of the major underlying events in Lin's story. These problems, highlighted in the agency, support the adverse credibility finding. For a post REAL ID Act case, such as Lin's, "an IJ may rely on any inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible." Lin v. Mukasey, 534 F.3d 162, 167 (2d Cir. 2008) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)).

In his affidavit, Lin stated that his problems began in middle school, when he fell in love with his classmate. He and the other boy became a couple, and, in June 2001,[2] after they hugged and kissed in the school lounge, they were called to the principal's office. There, the principal "severely condemned [them] for [their] activities." R. 587. Also, Lin's father was called to school. Lin's father apologized to the principal and dragged Lin from the room. Lin stated that he lost his balance on the way home and hit his head on a wall. Later, people in his village found out about his sexuality, and his classmates made fun of him.

_____

[2] In one letter from the classmate, who remains Lin's boyfriend, he described the incident as occurring in September 2001. R. 574. In another, it was written as June 2001. R. 464.

4

In his testimony at his second hearing,[3] Lin added that the principal told him that he was dismissed, which, according to Lin, meant that he could not go back to school anymore. R. 133. However, he also testified that he was able to graduate a couple of weeks later. R. 134. In addition to not mentioning any dismissal in his affidavit, Lin's testimony was inconsistent with his father's report of what happened. His father did not mention any dismissal from school, either. Instead, he wrote that after he was called to Lin's school and was told of Lin's sexual relationship with his classmate, Lin "was also crying every day, being aware of the situation of [the] family. Then his grades were even worse. He went out to work after he left the junior middle school." R. 460.[4]

---

[3] His testimony at the first hearing was that he never went back to school because if he went to school, he would be "so ashamed in front of [his] classmates." R. 423-24. He also speculated then that the principal "probably [wouldn't] allow [him] to go back," but an objection to the question that elicited that answer was sustained. R. 424.

[4] Given Lin's admitted graduation against the claimed dismissal (explained by reference to a quota system), the father's reference to slipping grades versus Lin's statement that he missed an examination, and Lin's boyfriend's different reporting of dates of the incident with the principal all support the IJ's request for corroboration. School records could have clarified the timeline and the events. Although the IJ's analysis of his point was brief, it comported with the dictates of Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001). In any event, in regards to this or the employment documents that the IJ discussed, Lin did not complain on appeal to the BIA that he was prevented from providing the required evidence or otherwise did not have notice that he was expected to do so. See Chukwu v. Att'y Gen. of the U.S., 484 F.3d 185, 192 (3d Cir. 2007). Such a claim therefore is not exhausted.

There are inconsistencies in Lin's account of what happened after the incident at school, too. In the written submissions from Lin, his father, and Lin's boyfriend, there are reports that his father considered sending Lin to a psychiatric hospital. R. 460, 574, 587-88. In his testimony, Lin repeated that his father wanted to send him to a psychiatric ward. R. 135. But, in his testimony, Lin also augmented his claim by stating that he was not allowed to leave his room for six months. R. 135. That detention was not mentioned in any of the written submissions. The only explanation that Lin had for the omission was that he did not know what to include or not in his affidavit because of his education level.[5]

The employment problems he claimed to have suffered were variously reported as well. In his affidavit, Lin testified that he got a job as a chef in a supermarket in Fuzhou

_____

[5] What happened for a few years after the incident in the principal's office is not well-developed, but Lin testified to two suicide attempts (he stole pesticides from his family, but his sister found out before he took them, R. 153, and he ate mouse poison once that had no effect, R. 157). He did not mention these in his application, either, although he said he lost his "courage to live." R. 82. His boyfriend mentioned that Lin once wanted to commit suicide, and his father said there were several attempts. The differences between these accounts may be reconcilable, "considering the circumstances under which the statements were made." 8 U.S.C. § 1158(b)(1)(B)(iii). And Lin's reliance on a problematic translation is not without support here; his father's statement was translated into an impossibility: "And for several times he committed suicide, which was stopped by others." R. 460. But, in any event, the IJ recognized that this matter was borderline irrelevant, noting specifically that "if this was the only issue the Court would have given [Lin] the benefit of the doubt." The IJ discussed the matter, however, because the inconsistency "typifie[d] a number of material inconsistencies . . . that go to the heart of the case." A.R. 40.

city in January 2004. He stated that he was fired, however, because his boyfriend came to see him[6] and their relationship was discovered. His efforts to find a job in his "local place" failed. R. 588. His testimony on this point was essentially consistent with his affidavit in that he testified that he had previously applied for work at two places without success before his aunt found him a job about 40 or 50 kilometers from his village. R. 141. He explained that he took a room in a dormitory shared with four others, and a co-worker caught him and his boyfriend in a sexual act. R. 142-43. The co-worker reported him to the personnel office, and his employer told him that his behavior was "not acceptable" and fired him. R. 144. However, his father stated that Lin went "out to work after he left the junior middle school [and] . . . got fired several times." R. 460.

In short, given the inconsistencies and omissions identified in the agency, as discussed above and otherwise, it cannot be said that the record compels a conclusion to the contrary regarding the adverse credibility determination. We also agree with the BIA that Lin did not establish his claim of a pattern or practice of discrimination against homosexuals in China based on the evidence (including the statements from his aunt and boyfriend) in the record. See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005). Additionally, the BIA did not err in denying Lin relief on his CAT claim.

---

[6] Initially, a letter from his boyfriend stated they were living together, but the letter was retranslated between the two hearings to read that they got together often. R. 327.

For these reasons, we will deny the petition for review.[7]

---

[7] Lin's request for oral argument is denied.