**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3543
_____

LUIS ANTONIO ROSALES MANRRIQUEZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A216-266-881)
Immigration Judge:  Honorable John P. Ellington

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)

Before: AMBRO, GREENAWAY, JR. and PORTER, Circuit Judges

(Opinion filed:  April 8, 2020)
_____

OPINION*
_____

PER CURIAM

　　Luis Antonio Rosales Manrriquez (Rosales) petitions for review of the Board of

Immigration Appeals (BIA) order dismissing his appeal from an immigration judge's (IJ)

decision denying his applications for asylum, withholding, and relief under the

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

Convention Against Torture (CAT). For the reasons that follow, we will deny the petition for review.

In December 2017, Rosales, a citizen of Venezuela, was placed in removal proceedings as an applicant for admission who lacked a valid entry document, see 8 U.S.C. § 1182(a)(7)(A)(i)(I). He applied for asylum, withholding of removal, and CAT relief. He maintained that he suffered past persecution in Venezuela on account of his political opinion, and that he would suffer future persecution and torture should he be returned there.

At a hearing before the IJ, Rosales testified that he was a famous professional boxer in Venezuela. In October 2013 or 2014, members of the Venezuelan Sports Authority, a government body for which Rosales boxed, beat him severely for refusing to publicly support Venezuelan President Nicolas Maduro and his government. Rosales was told that if he did not "fight for Maduro," they would "finish him off." Rosales took this as a threat to both his professional career and his life. In addition to continued death threats by phone, his "pad was destroyed . . . they wrote with paintings . . . on the walls." A.R. at 163. He testified that he retired as a boxer, rather than publicly support the government, and that he moved around Venezuela to avoid further harm, including spending time at his grandparents' secluded farm. In 2015, he flew to Mexico for a sporting engagement. He remained there, boxing professionally, until entering the United States in 2017.

---

constitute binding precedent.

The IJ decided that Rosales's testimony was credible, but that he had not established a sufficient basis for asylum, withholding, or relief under the CAT, and ordered him removed to Venezuela. The BIA conducted its own analysis of the legal issues and dismissed the appeal. Rosales filed this timely petition for review.

We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252. When, as here, the BIA affirmed and partially reiterated the IJ's discussions and determinations, we review both decisions. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We review the agency's findings of fact for substantial evidence, considering whether it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998). The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (citation omitted).

<u>Asylum & Withholding of Removal</u>

To make out a prima facie case for asylum, Rosales must show that he was persecuted, or has a well-founded fear of persecution, "on account" of a statutorily protected ground, including "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13. Rosales sought asylum on the basis of his political opinion, i.e., refusing to publicly support President Maduro and his government.

With regard to past persecution, Rosales testified that, during the attack by the

3

government agents, he was kicked in the face and back. He testified that his back was "twisted or out, out of line" and his nose was "twisted." A.R. at 160, 177. He did not go to a hospital for treatment, but he obtained first aid from his trainer, and spent months healing. The Board noted that the incident was isolated, and that it did not result in serious injury. It therefore agreed with the IJ that the harm suffered at the hands of the sports authority members, including the subsequent harassment and threats, did not rise to the level of past persecution.

Rosales argues that the Agency diminished and downplayed the severity of the beating. He claims that he informed the Agency that his nose and back were both broken. Although he indicated on his asylum application that the assailants "broke my back," he did not testify likewise, and his testimony that the back was merely "twisted" and that it required only "vitamin shots" and "massage[ ] therapy" from his grandfather to heal, did not suggest a severe injury. Further, he provided no statements nor testimony indicating that his nose was broken. The Agency's determination that the assault did not rise to the level of persecution is therefore supported by substantial evidence. See Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) (single beating that does not result in serious physical injury does not compel reversal of the Board's decision that alien did not suffer past persecution).

"The term 'persecution' is not limited to physical harm or threats of physical harm and may include threats of economic harm, so long as the threats, if carried out, would be of sufficient severity that they amount to past persecution." In re T–Z-, 24 I. & N. Dec.

4

163, 169 (BIA 2007); see Li v. Att'y Gen., 400 F.3d 157, 169 (3d Cir. 2005) (referring to "severe economic disadvantage which could threaten [a] family's freedom if not their lives" as an example of persecutory harm). While the Board has recognized that "a sweeping limitation of opportunities to continue to work in an established profession or business may amount to persecution even though the applicant could otherwise survive," it is not "likely to qualify as persecution by itself." In re T-Z-, 24 I. & N. Dec. at 174. The BIA concluded that the loss of Rosales's "preferred profession" is not so severe as to amount to persecution. See Ahmed v. Ashcroft, 341 F.3d 214, 218 (3d Cir. 2003). The record does not compel a contrary conclusion. As the IJ noted, "in addition to professional boxing, respondent has construction skills that were gained in Venezuela." A.R. at 96 (citing Ex. 3 (the asylum application)). Indeed, Rosales admitted that he had done a variety of types of work in Venezuela, including "pro boxer, painter, construction, painting, electrical." A.R. at 393.

Next, the Board agreed with the IJ that Rosales had a subjective fear of future persecution but concluded that the objective evidence did not support it. The IJ determined that Rosales's claim that the government authorities sought to persecute him was belied by the evidence that he was able to procure government documents in 2015, including a police clearance (a criminal background check) that went to Mexico, an identification document, and a passport, and was then permitted to leave for Mexico from the international airport. For two of these documents, Rosales went in person to a government office in Caracas. Rosales testified that he was able to obtain these

government documents and depart the country safely because he used his full legal name (Luis Antonio Rosales Manrriquez), rather than the abbreviated name that he uses as a boxer (Luis Rosales Valero). On appeal to the Board, Rosales argued that the IJ ignored this testimony in determining that his fear of future persecution was not well-founded.

We disagree that the Board did not meaningfully address this argument. See Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001) (recognizing that an alien has a right to an "individualized determination" of his interests, including meaningful consideration of his evidence and arguments). The IJ did not ignore Rosales's testimony on this point; rather, he considered it and discounted its probative value: "The respondent seems to believe that because he had a professional boxing name, as well as a given name, that somehow the government was unable to connect the dots and that he was allowed to safely get the documents and leave. Quite frankly, the respondent is not an expert on the government of Venezuela, but looking at the background evidence, including the Department of State Report and documents submitted by the respondent, the Court finds this hard to believe." IJ Op. at 8. The IJ concluded that Rosales "was allowed to go to Mexico with the full blessing of his government." Id. at 10.

On appeal, the BIA explicitly acknowledged Rosales's argument: "According to respondent, he was not impeded in his departure because he used his full legal name to obtain the documents, rather than the abbreviated version of his name that he used as a boxer." BIA Op. at 2. And, in determining that "there was no basis in the record to support [his] speculative fear," the BIA noted that Rosales "remained in Venezuela for a

6

year or two after the beating and exited the country legally, having obtained all necessary documents issued to the government of Venezuela." BIA Op. at 3. "The Board is not required to write an exegesis on every contention, but only to show that it has reviewed the record and grasped the movant's claims." Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) (citations omitted). While the Board could have made clearer its apparent agreement with the IJ that the Venezuelan government "knowingly" approved of Rosales's departure to Mexico, it provided sufficient insight into its reasoning to support meaningful review. See Awolesi v. Ashcroft, 341 F.3d 227, 231-33 (3d Cir. 2003).

Rosales also argues that the Agency did not appreciate the significance of his testimony that he was only able to leave the country because he was pretending to be a "retired boxer." He asserts that, once he started boxing again in Mexico, his name was in the papers in Venezuela. As a result, he maintains, the Maduro Government would feel misled and "would definitely assassinate him, for continuing to fight and not represent the regime." Although he is correct that he was deemed credible, the Board concluded that his testimony on this issue was speculative; there was no evidence to corroborate this aspect of his claim. See Shao v. Mukasey, 546 F.3d 138, 162 (2d Cir. 2008) (observing that while "credible testimony was sufficient to demonstrate a genuine subjective fear of future persecution, more was needed to demonstrate the objective reasonableness of that fear"). The few articles Rosales presented are not, as he maintains, "evidence that the

7

[Venezuelan] government is brutal to athletes."[1]  We therefore find no error.  And because Rosales failed to meet his burden to establish his asylum claim, he could not meet the heightened burden to establish withholding of removal.  See Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003) (describing relationship between asylum claims and claims for mandatory withholding of removal).

CAT Claim

To succeed on his CAT claim, Rosales had to establish that he is "more likely than not" to be tortured "by or at the instigation of or with the consent or acquiescence of" a Venezuelan public official.  8 C.F.R. § 1208.16(c)(2); § 1208.18(a)(1); Sevoian, 290 F.3d at 174–75.  There is no merit to Rosales's claim that the IJ failed to make a finding as to what is likely to happen to him upon return to Venezuela.  The IJ noted that this was not an acquiescence case, as Rosales alleged that he would face torture at the hands of Government officials.  See Myrie v. Att'y Gen., 855 F.3d 509, 515-16 (3d Cir. 2017).  The IJ specifically found that Rosales failed to meet his burden to demonstrate that it is more likely than not he would be targeted for harm by the government upon his return.

---

[1] One article focused on athletes protesting the Government's repression, with no indication of reprisals.  A.R. at 259-60.  Another article described how some professional baseball players no longer felt safe returning to their native Venezuela because of the general "safety problems and economic distress" brought on by the Maduro regime.  A.R. at 264-68.  Although one article indicated that a former world boxing champion was kidnapped along with his family and later killed, there is no indication in the article that the Venezuelan government was responsible.  A.R. at 245-50.  Several articles and the country conditions evidence describe the general brutality of the Maduro regime towards dissidents and anti-government protestors; however, there is no indication it is directed specifically at athletes.

On appeal, the BIA stated only that Rosales had "not meaningfully articulated a basis upon which he would warrant" relief under the CAT. The Board cited In re J-F-F-, 23 I. & N. Dec. 912 (A.G. 2006), in which the Attorney General held that an alien whose CAT claim is based on a "series of suppositions" must establish that each link in that "hypothetical chain of events" is more likely than not to occur. Id. at 917-18 & n.4. The record supports the conclusion that Rosales had not established by a preponderance that he would likely be tortured in Venezuela.

Rosales also alleges that his due process rights were violated because the IJ was biased against him. See Wang v. Att'y Gen., 423 F.3d 260, 269 (3d Cir. 2005). He did not exhaust this issue before the Board. See Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005). In any event, the IJ's questions and statements noted by Rosales do not support a claim of bias. See Liteky v. United States, 510 U.S. 540, 555 (1994).

Finally, we note, with disapproval, that Rosales was removed in violation of this Court's order granting his motion for a stay of removal.[2] Although Rosales's removal

_____

[2] In March 2019, the case was dismissed for failure to prosecute because Rosales failed to timely file a brief and appendix. The Office of Immigration Litigation (OIL) was notified by email from this Court that the stay of removal "remains in effect" pending Rosales's motion to reopen his petition for review. OIL forwarded the email to agents at Immigration and Customs Enforcement and the Department of Justice, including the attorney for Respondent. Despite this specific notification from this Court, in its response to the motion to reopen, Respondent stated its understanding – *to the contrary* – that the stay was no longer in place pursuant to 3d Cir. L.A.R. 107.2(a). Rosales was removed prior to the Court's order granting the motion to reopen. We remind the government that until an order granting a stay entered by this Court is vacated by this Court, the order remains in effect. This is especially so when the government is directly notified of the stay.

did not moot his petition for review, see Amanfi v. Ashcroft, 328 F.3d 719, 724 n.1 (3d Cir. 2003), it hindered his ability to litigate his case and, with no forwarding address, to follow its progress. Nevertheless, because the administrative record supports the Agency's rulings on Rosales's claims for relief, we decline to exercise our authority to order the Government to return Rosales to the United States. See generally Chambers v. NASCO, Inc., 501 U.S. 32, 43-47 (1991). We fully expect, however, that such disregard for a stay order is, and will remain, an isolated incident.

Based on the foregoing, we will deny the petition for review. The Court's February 7, 2019 order granting a stay of removal is hereby vacated.